## FRANK *v.* DAVIS.

*N. Y. Supreme Court, First Department, General Term;*
*October*, 1889.

1. *Usury in antedating purchase-money mortgage*]. Usury cannot be predicated of an agreement to sell real estate and receive in payment therefor a purchase-money mortgage, bearing the legal rate of interest, merely because it is stipulated that the interest is to be calculated from a date prior to the agreement. In such a contract, the provision for computing interest is simply a means of increasing the purchase price, and the transaction involves neither a loan of money nor any forbearance in respect to a pre-existing debt.[*]

2. *The same.*] The fact that such mortgage also covers an amount advanced by the mortgagee to pay the expenses attending the sale will not render it usurious, where that had been required by the mortgagee as a part of the consideration of the sale.

Appeal by defendant from a judgment of foreclosure and sale.

The action was brought by Julius J. Frank against Edward A. Davis to foreclose a mortgage on premises in the city of New York.

The facts are fully stated in the opinion.

*Donohue, Newcombe & Cardozo* for appellant.

*Samuel W. Weiss,* for respondent.

---

[*] A mortgage for purchase money is not usurious merely because of the purchase price being larger on account of the purchaser not paying cash (Lindsley *v.* Shipp, 23 *Weekly Dig.* 152) ; nor is a mortgage made for full value usurious because made to be sold at a discount (O'Brien *v.* Ferguson, 37 *Hun,* 368, and cases cited).

Reserving interest while the money bears interest when waiting under engagement to the borrower, is not usury (Bevier *v.* Covell, 87 *N. Y.* 50; affi'g 7 *Weekly Dig.* 527); nor is reserving interest in advance when no rate is stipulated for (Bloomer *v.* McInerney, 30 *Hun,* 201).

BARTLETT, J.— This appeal is based solely on the allegation that there was usury in the making of the mortgage sought to be foreclosed.

On January 23, 1887, a contract was entered into between Isidor Cohnfeld and Elias T. Hatch, whereby Cohnfeld agreed to sell, and Hatch agreed to buy, certain real property in the city of New York, for $40,000. The title was to pass on March 1, 1887. Hatch failed to fulfill his part of the contract, and it was adjudged in the superior court of the city of New York that Cohnfeld was entitled to retain as liquidated damages $6,000, which Hatch had paid to him on account of the purchase price.

Pending the appeal from this decision, Cohnfeld and Hatch entered into negotiations for a settlement of their differences by a sale and purchase of the premises at an advanced price. Payment of the advance was to be made by giving a bond and mortgage. The amount of this mortgage, as first proposed, was to be $4,500. Then Hatch asked Cohnfeld to make some payments on his account to attorneys and others to enable him to effect the contemplated adjustment, and Cohnfeld made these payments, which aggregated $1,000. It was then agreed that the mortgage should be given for $5,500, with interest at six per cent. These negotiations were had about the middle of July, 1887, but as the title was to have been closed under the original contract of sale on March 1, 1887, it was agreed that the mortgage should bear date on that day. On July 13, 1887, Hatch executed an instrument, in writing and under seal, by which he released Cohnfeld from all obligations to him under the original contract between them, and requested Cohnfeld to convey the premises to Edward A. Davis, the defendant herein, upon such terms as he deemed proper. The instrument empowered Cohnfeld to retain the proceeds without any claim to the same, or any part thereof, in behalf of Hatch, who expressly surrendered to Cohnfeld all his right, title and interest in and to the property. Cohnfeld thereupon conveyed to the defendant Davis, taking

from him, in part payment, the purchase money mortgage for $5,500 now in suit. It is dated March 1, 1887, and bears interest at the rate of six per cent. from that date. It was in fact executed, acknowledged and recorded on July 14, 1887.

The plaintiff, Julius J. Frank, sues as the assignee of Cohnfeld, the mortgagee.

The appellant insists that the mortgage is usurious because it was given in part to secure the $1,000 advanced in July, while the interest thereon by the terms of the mortgage is payable from March.

No usury can be predicated on an agreement to sell real estate, and receive in payment therefor a purchase money mortgage bearing the legal rate of interest to be calculated from a date prior to the agreement. In such a contract the provision for computing interest from some past date is simply a means of increasing the purchase price. The transaction involves neither any loan of money nor any forbearance in respect to a pre-existing debt. No serious question, therefore, would arise in the present case if the mortgage, which was dated back, had been for $4,500 only, or if it had been given for $5,500 irrespective of the $1,000 advanced or loaned by Cohnfeld to Hatch. But inasmuch as it represents and secures that advance or loan to the extent of $1,000, the defendant argues that it is usurious because six per cent. interest is charged on that amount, not from the date in July on which it was actually advanced or loaned, but from March 1, 1887.

Notwithstanding the fact, however, that the amount of the mortgage does appear to have been augmented by $1,000 in consequence of this advance or loan, we do not think the transaction should be pronounced void for usury. The main design which both parties had in view was a sale and purchase of the property at a price higher than that provided for in their agreement. It was to enable Hatch or his assignee, the defendant Davis, to become a purchaser at an increased price, that Cohnfeld consented to advance the

$1,000. Having done this, he was unwilling to sell unless the amount to be secured by the purchase money mortgage should be increased to $5,500, and unless this sum of $5,500 should bear interest at the legal rate to be computed from the time which had been fixed for passing title under the original contract. These were conditions which he might lawfully insist upon, and in so doing he merely raised the price for the property. It was as though he said, after Hatch had executed the instrument requesting him to convey to the defendant on such terms as he deemed best : "I will not sell unless I am paid by means of a purchase-money mortgage the $4,500 originally contemplated, the $1,000 which I advanced to Hatch, and interest on this $1,000 for the time which has elapsed since March 1, 1887." If the reservation of this interest is deemed to be merely an augmentation of the purchase price, it was not usurious. We think it should be so regarded.

A transfer of the real property was the main object which both parties were seeking to accomplish. There is no evidence of any intent to use that transaction as a cloak for any usurious agreement, and under such circumstances "refined theories should not be resorted to for the purpose of making out usury by construction" (Clarke *v.* Sheehan, 47 *N. Y.* 188, 195). Viewed as a whole, and fairly, the transaction seems to have been nothing more than a method of agreeing upon a higher purchase price for the land to be sold than that provided for in the first contract.

It may be added that there is no proof of any knowledge on the part of the defendant Davis of the negotiations between Hatch and Cohnfeld, or of the advance or loan by Cohnfeld to Hatch, except that Hatch, in testifying to what occurred, speaks of himself as "representing Mr. Davis." The transactions between Cohnfeld and Hatch, looking toward a settlement between them, were wholly oral, and no enforceable agreement relating to the land was ever entered into by them subsequent to their first contract, until the execution of the instrument of July 13, 1887,

whereby Hatch released Cohnfeld and directed him to convey to Davis on such terms as he deemed proper. It is not proved, though it may be surmised, that he undertook to convey to the defendant Davis on the terms discussed with Hatch ; but he certainly was under no legal obligation to do so. Cohnfeld did convey to Davis, on terms which included taking this $5,500 mortgage, bearing 6 per cent. interest from March 1, 1887, in part payment. No money had been loaned to Davis, and, so far as he is concerned, there is little or nothing to show that the mortgage was to any extent based on the advance of a thousand dollars to Hatch. Indeed, the recital in the mortgage that it is given for purchase money implies that if there was any loan from Cohnfeld which Davis was to be made responsible, it had been secured in some way, for certainly a loan would not ordinarily be spoken of as purchase money.

The court below properly held that the defense of usury was not made out, and the judgment directing the foreclosure and sale of the property should be affirmed, with costs.

VAN BRUNT, P. J., and MACOMBER, J., concurred.