JAMES BIRD, Plaintiff, v. JESSIE NAPODANO et al., Defendants.

(Supreme Court, Monroe Equity Term, July, 1919.)

Mortgages — when antedating of building loan mortgage will not be considered usurious.

> The antedating of a mortgage under a building loan contract will not be construed as an attempt to evade the statute against usury because of additional interest obtained, where the money is advanced from time to time after the date of the mortgage,

but the excess interest, if reasonable in amount, will be construed as a lawful allowance to the lender for services in connection with the risk and supervision accompanying the loan, unless it is clear that the antedating was used as a cloak for evading the statute.

Action to foreclose mortgage.

Frank J. Dinse (George E. Warner, of counsel), for plaintiff.

Claude T. Taggart, for defendant Napodano.

Harlan W. Rippey, for defendant Williamson Lumber Company.

Rodenbeck, J. The defense in this action is an attempt by the defendant Jessie Napodano, whose husband was a student in a law office, to avoid a mortgage on real property for usury, although if there was usury the Napodanos were consciously and intentionally parties to it. The defendant the Williamson Lumber Company seeks to make its second mortgage a first mortgage by abetting the unconscionable position of the Napodanos and destroying the first mortgage of the plaintiff. This is sought to be accomplished in the first place by endeavoring to merge two separate and distinct mortgages, one to this plaintiff and one to his sister under which advances were made by each from his own funds. It is also sought to distort a lawful allowance for services into an unlawful allowance or bonus for excessive interest on advances made through a building loan contract. The defendant Jessie Napodano, when she began operations, had nothing but the lots and an ambition to build two houses costing in the neighborhood of $14,000. She had not even paid for the lots and used

advances received under one of the mortgages to acquire the land upon which to begin the erection of the houses. The Napodanos began their building operations with no assets and no financial responsibility and borrowed the money from the plaintiff not only to purchase the lots but to purchase the material and labor necessary to erect the buildings. In their plan of financial advancement they now seek to avoid the payment of the plaintiff's mortgage and beat him out of his loan. After all the money has been advanced and used and the buildings completed, they take the high moral attitude as announced by the husband, that " they stand upon their legal rights." This procedure does not appeal to the court and it will not be astute to find grounds to assist them in their unconscionable pretense that they have been grievously injured by the exaction of unlawful interest. There was no such exaction. The witness Remarque, whose testimony was impeached by his own admissions, acted as the agent for the defendant Jessie Napodano, as did her husband in this whole affair. She was not even sworn. The money was loaned through Remarque, who arranged with the husband for a commission. He paid none of this to the plaintiff. The checks passing between Remarque and the plaintiff were satisfactorily explained. The attempt to fasten the charge of usury upon the plaintiff rests upon the manipulations of Remarque. His testimony as to conversations with Elizabeth Bird as well as notations on his checks which he deposited to plaintiff's credit and the amount of his commissions in the statements furnished by him show a design on his part to invalidate plaintiff's mortgage by giving the appearance of usury. The mortgage was dated in June and this was done with the oral understanding that the money would not be advanced until fall. This was done to provide for the risk to the plain-

tiff of loaning the money under the circumstances and as an allowance to him for supervision which is usual on building loan agreements. Such loans cannot be obtained on the same terms as ordinary loans as the Napodanos well knew on account of the necessity placed upon the lender of assuring himself that the money is put into the building and not into the borrower's pocket and even then the risk is great, particularly when dealing with unconscionable parties. Remarque knew that it was usual to charge commissions on such loans. Such loans are usually made on mortgages which are given before the moneys are advanced. This practice has not been questioned and it has been assumed to be legitimate on account of the nature of the loan and the risk and supervision involved. The theory of these loans is that the mortgages securing them are made good by putting back into the property the equivalent for the money as advanced and the assurance of this fact requires time, labor and some risk with the best of borrowers. The plaintiff was even frightened out of the meager stipend of additional interest and not only received nothing by way of principal or interest under the mortgage but relinquished any claim to the additional interest upon the trial. The Napodanos did not even pay or tender this alleged excess interest as they might well have done to put a better face on their claim in this action. The predating of a mortgage under a building loan contract will not be construed as an attempt to evade the statute against usury by reason of the additional interest obtained where the money is advanced from time to time after the date of the mortgage but the excess interest if reasonable in amount will be construed as a lawful allowance to the lender for services in connection with the risk and supervision accompanying such a loan, unless it is clear that the predating was

used as a cloak for evading the statute. The transaction in this case was lawful without proof of an intent to evade the statute or exact more than the lawful rate of interest and the mortgage is valid.

Ordered accordingly.