## 130

Anna DRESSLER, Legatee Mortgagee of
The Estate of Morris Dressler,
Libelant-Appellee,

v.

The MV SANDPIPER, its boilers, engines,
tackle, apparel, furniture, etc., Joseph
Fanale, and against all persons inter-
vening by their interest therein, Re-
spondents-Appellants.

No. 333, Docket 28499.

United States Court of Appeals
Second Circuit.

Argued March 9, 1964.

Decided April 9, 1964.

Sidney Feldshuh, of Feldshuh &
Frank, New York City, for libelant-ap-
pellee.

Donald S. Sherwood, New York City
(Kenneth Heller, New York City, on the
brief), for respondents-appellants.

Before SMITH, KAUFMAN and
MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge:

This action was brought in Admiralty
to foreclose a preferred ship mortgage
upon the MV Sandpiper, a vessel owned
by respondent Fanale. Although the libel
was returnable on June 19, 1963, the
respondent failed to file an answer by
that date, and on July 18, the libelant
moved for a summary judgment, pursu-
ant to Admiralty Rule 58. On July 30,
one day before the return date of libel-
ant's motion, respondent's answer to the
libel was belatedly filed, alleging, *inter
alia*, that the mortgage and the note
which it secured were usurious. On this
appeal, respondent insists that these un-
supported and conclusory allegations of
his untimely answer to the libel were
sufficient to create a genuine issue of
fact, and hence to render erroneous the
District Court's award of summary judg-
ment.

As alleged in the libel, the note and
mortgage in the principal amount of
$21,000 were executed by Fanale to one
Morris Dressler in June of 1962, and
were duly recorded. In September of
that year, Dressler died, and the libelant
became the owner of all of his real and
personal property—presumably including
the claim against Fanale—except for cer-
tain specific bequests unrelated to the
present action. Three months thereafter,
the first installment of principal and in-

terest, amounting to some $5,565, became due under the mortgage note.[1] Although demand was duly made for this amount, the respondent paid only $3,000, and, pursuant to an acceleration clause contained in both the note and mortgage, the libelant accordingly declared the entire unpaid balance on the note to be due and owing. When the respondent failed to satisfy this demand, the present action was commenced to foreclose the mortgage.

When finally filed, the respondent's answer fully admitted execution and delivery of both the note and mortgage, and further conceded that only $3,000 had been paid. In addition and by way of affirmative defense, however, the respondent alleged that the libelant had granted a temporary "moratorium" upon further payments when the $3,000 sum was tendered, and that Fanale had thus been "entrapped" into not complying further with the terms of the note. Moreover, the answer alleged that "contrary to the terms of the mortgage note, Respondent did not receive the sum of $21,000 * * * prior to January 1, 1962, but up and until and including January 1, 1962, respondent only received the approximate sum of $17,500" from the libelant. Since the note called for 6% interest to run from January 1, 1962, on a $21,000 principal amount, Fanale thus contended that the note and mortgage were usurious and hence invalid.

On the motion for summary judgment libelant submitted additional evidence to the District Court indicating that the note and mortgage had been given in substitution for two notes, totalling $21,000, which were executed by Fanale to Dressler in April of 1962. It was also revealed that while the motion for summary judgment was pending but before the an-swer had been filed, the respondent had tendered checks of $2,965 and $365 in partial payment of his indebtedness, but that both had been rejected by the libelant. Respondent's attorney submitted only his own affidavit, which contained little more than a summary of the allegations set forth in the answer.

The District Judge refused to consider this affidavit and while his decision in this respect has not been challenged on appeal, we find it plainly correct. In the words of Admiralty Rule 58(e), opposing affidavits must be made "on personal knowledge," and must "set forth such facts as would be admissible in evidence." It is clear that the affidavit submitted here, concededly based on a "reading of Respondent's answer," does not measure up to these requirements.

The District Court quickly disposed of the respondent's claim of an oral "moratorium" in the answer to the libel, on grounds which are equally fatal to Fanale's similar contentions on appeal. Thus, it was noted that New York will sustain a modification of a pre-existing obligation only if written or supported by consideration, and that the respondent had failed to allege either of these prerequisites. See N.Y. Personal Property Law McKinney's Consol.Laws, c. 41, 33 (2).

While no similar legal barrier stood in the way of the claim of usury, it was dismissed with equivalent dispatch. After noting that "no explanation of [respondent's] default in answering was supplied," the Court found the answer, "treated as an affidavit," to be "too general to be useful on the present occasion." As a result, the Court concluded that respondent's "assertions [of usury] scarcely raise the defense on such an occasion as this," and accordingly granted

---

1. This $5,565 sum represented one-quarter of the principal obligation, or $5,250, plus interest for the last quarter of 1962, or $315. The libel alleged only a demand for this amount, and no indication has been provided by either party as to whether any additional interest, for earlier portions of 1962, was ever demanded or collected. Since Fanale's claim of usury is wholly dependent upon provisions for the collection of interest from January 1, 1962, his failure to allege that interest was, in fact, collected for this earlier period seems especially significant.

the libelant's motion for summary judgment.

On appeal, Fanale insists that his answer and its contentions of usury raised a "substantial issue" of fact "which can be resolved only upon a * * * hearing." The libelant, on the other hand, maintains that the District Court was entirely justified in looking beyond the bare pleadings in an effort to determine whether there was a "genuine issue of fact to be tried." We are squarely faced, therefore, with significant questions as to the proper role of the District Court in motions for summary relief.

In resolving such issues, we are by no means confined to our experience as a Court of Admiralty. For as adopted in 1961, Admiralty Rule 58 is a carbon copy of Rule 56, F.R.Civ.P., as it existed prior to the amendments made effective in July of 1963. But if the long history of practice under the Civil Rule thus provides a convenient starting point, the teachings of that history have often reflected sharply divergent judicial attitudes towards the desirability of the summary judgment procedure. Thus, in apparent accord with the decision below, many courts and commentators have insisted that the device of summary judgment was to have a far broader range than the old, common-law demurrer, and that the availability of affidavits, depositions, admissions and the like represented an acknowledgment that mere formal denials and allegations, while sufficient to stand as pleadings, were to be pierced upon Rule 56 motions and could not forestall the award of summary relief. See, e. g., Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2d Cir. 1943); Thomas v. Mutual Benefit Health & Accident Ass'n, 220 F.2d 17 (2d Cir. 1955); City of Zephyrhills, Fla. v. Crummer & Co., 237 F.2d 338 (5th Cir. 1956); Duarte v. Bank of Hawaii, 287 F.2d 51 (9th Cir.), cert. denied, 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261 (1961); Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494 (2d Cir. 1962); Wagoner v. Mountain Savings & Loan Ass'n, 311 F.2d 403 (10th Cir. 1962); Wright, Rule 56(e): A Case Study on the Need for Amending the Federal Rules, 69 Harv.L. Rev. 839 (1956); Clark, "Clarifying" Amendments to the Federal Rules?, 14 Ohio St.L.J. 241, 249–250 (1953).

At the same time, however, a large number of courts, often expressing a fear of "trial by affidavit," displayed a far more restrictive attitude towards motions for summary judgment. In this Circuit, for example, numerous decisions seemed to reflect a great reluctance to find that no genuine issue of fact remained for trial, and we have hence reversed and remanded a long line of cases in which summary judgment had been awarded below. See, e. g., Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); Colby v. Klune, 178 F.2d 872 (2d Cir. 1949); Bromberg v. Moul, 275 F.2d 574 (2d Cir. 1960); Kern v. Hettinger, 303 F.2d 333 (2d Cir. 1962); cf. Empire Electronics Co. v. United States, 311 F. 2d 175 (2d Cir. 1962). Even more vigorously, the Court of Appeals for the Third Circuit long espoused a narrow view of the trial court's role in motions for summary relief. Repeatedly refusing to pierce the allegations of the pleadings, that Court was firm in its insistence that "[a]n affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well-pleaded facts in the complaint." Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580, 581 (3rd Cir. 1948).

As explained by the Advisory Committee, the recent amendments to Rule 56 were designed to overcome just such cases, which, in the words of the Committee, have "impaired the utility of the summary judgment device." "The very mission of the summary judgment procedure," the Committee explained, "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule." United States Code Annotated, Nov., 1963, pamphlet,

pp. 55–56. So that this "incompatible" result might be avoided, Rule 56(e) was specifically amended to provide that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

■ If the present case were to be decided under Civil Rule 56 as amended, it would thus seem clear that respondent's vague and conclusory allegations of usury would not be sufficient to forestall the award of summary judgment. The highly general assertions of Fanale's answer to the libel, buttressed by no specific facts or evidentiary data, are hardly the sort of concrete particulars which the amendments sought to require. See Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir. 1964); Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963 (II), 77 Harv.L.Rev. 801, 825 (1964). And the fact that Admiralty Rule 58 was not amended to conform to its Civil counterpart would not seem to preclude an identical result here. Indeed, the comments of the Committee and its reporter, see Kaplan, supra, would seem to indicate that the amendments to Rule 56 were merely intended more explicitly to state what had always been the Rule's underlying purpose, rather than to introduce any startlingly novel innovations. We should add, moreover, that we find it difficult to believe that the failure similarly to amend the Admiralty Rule is attributable to any grand design; once it has been decided that a summary judgment procedure identical to that provided by Civil Rule 56 should be incorporated into the Rules of Admiralty, there seems no reason why declaratory amendments such as these

shouldn't be equally applicable here. Cf. Weyerhaeuser Co. v. Gershman, 324 F.2d 163 (2d Cir. 1963).

Furthermore, even if the questions of the recent amendments to Civil Rule 56 and their application to Admiralty Rule 58 are put aside, we find it clear that the circumstances present here would have warranted summary relief. Indeed, if this respondent were permitted to avoid summary judgment, Rule 58 and its attempt to screen out sham issues of fact would become devoid of practical significance, and would stand as but a meaningless monument to noble, if ineffectual, intentions. Litigants would be enabled to postpone the inevitable to another day—precisely what summary judgment was intended to avoid.

■ A brief recapitulation of the procedural history of this case vividly illustrates the lack of substance in respondent's position. As we have indicated, the motion for summary judgment was filed only after Fanale had given no indication whatsoever that an answer to the libel was forthcoming. The respondent has never bothered to offer reasons for this delay; as Judge Dooling observed, "no explanation of the default in answering was supplied and it stands unexcused." [2] After libelant moved for summary judgment, moreover, Fanale's first thought was to tender payments on account of his indebtedness, and it was only after checks of $2,965 and $315 were rejected by the libelant, that the answer and its conclusory allegations of usury were interposed—one day before the motion for summary judgment was returnable. In short, the claim of usury had never been raised until libelant rejected respondent's attempt to make partial payment and was not deterred from continuing to press his motion for summary relief. This fact alone would appear to warrant the District Court's inclination to view the allegations with a somewhat jaundiced eye.

2. Although it is not necessary to consider the point since the District Court appeared to base its result on other grounds, the entry of a default judgment would have been entirely proper under Admiralty Rule 28.

Finally, and most significantly, the District Court was entirely justified in its conclusion that the "answer, treated as an affidavit, is too general to be useful." As we have noted, the claim of usury was based solely upon the fact that interest was to run upon a $21,000 obligation from January 1, 1962, and that respondent had alleged that he had only received approximately $17,500 "up until and including" that date. Not only are there no facts set forth in support of this claim (nor were there any in the so-called affidavit of the attorney) but the allegation itself seems so pregnant a negative as to have virtually given birth to its contradiction. Fanale has never claimed that he did not ultimately receive the full $21,000 specified in the note and mortgage, nor even that he did not receive this amount on January 2nd or 3rd; he has simply claimed that only $17,500 had been received "on the date of the commencement of the computation of interest," January 1, 1962. And in light of the reluctance of New York courts to invoke the harsh remedies prescribed for usurious obligations, we are by no means convinced that a provision calling for interest to run for a very brief period before the full amount of the loan is actually advanced would be invalidated as usurious. See, e. g., Lynde v. Staats, 1 N.Y.Leg.Obs. 89 (1842); Businessmen's Mortgage & Credit Ass'n v. Dobjinsky, 135 Misc. 628, 238 N.Y.S. 158 (1928); cf. Hinman v. Brundage, Sup., 13 N.Y.S. 2d 363 (1939); McAnsh v. Blauner, 222 App.Div. 381, 226 N.Y.S. 379 (1928); Bird v. Napodano, 108 Misc. 309, 177 N.Y.S. 541 (1919); Frank v. Davis, 53 Hun 636, 6 N.Y.S. 144 (1889), aff'd, 127 N.Y. 673, 28 N.E. 255 (1891).

In pointing out the weaknesses of respondent's answer and the ambiguity of his claim of usury, we are by no means suggesting that we return to the days when a litigant would find himself out of court if he had failed to dot every "i," and cross every "t." The age when this sort of hyper-technical interpretation of pleadings would subordinate substance to form is mercifully long behind us. Nor

are we saying that an issue which turns on credibility of witnesses should be decided by summary judgment rather than on a trial. But the fact that the answer here lends itself to any number of interpretations, none of which rises to evidence sufficient to contradict libelant's claim and affidavit, and the note and mortgage themselves, strikingly illustrates its inadequacy as a defense to a motion for summary judgment. Indeed, it is precisely because vague allegations such as the respondent's furnish virtually no assistance to a court seeking to determine whether a "genuine" issue of fact remains for trial that Admiralty Rule 58 requires that affidavits "set forth such facts as would be admissible in evidence," rather than the ambiguous and conclusory allegations commonly contained in the pleadings. Only in this way may the underlying objective of the summary judgment procedure—"to discover whether one side has no real support for its version of the facts"—be satisfied. See Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494, 498 (2d Cir. 1962).

Recently paying tribute to Judge Clark, who himself had been critical of the "devastating gloss" which some courts had placed on Rule 56, see Clark, "Clarifying" Amendments to the Federal Rules?, 14 Ohio St.L.J. 241, 249 (1953), Chief Justice Warren observed that under the Civil Rules, "a law suit is a search for the truth and the tools are provided for finding out the facts before the curtain goes up on the trial." 38 Conn.B.J. 3 (1964). The provision for summary judgment, in Admiralty no less than in the Rules of Civil Procedure, is one of the most significant of such "tools"; if the Rule is properly followed, a Court is enabled to discover whether a need exists for the "curtain" ever rising at all.

Had he wished to comply with this spirit and to make *this* law suit "a search for the truth," Fanale had ample opportunity, not only to file a timely answer to the libel but also a full and meaningful affidavit, submitting to the

court the specific facts which lay behind his claim of usury. He has not done so, and as we recently had occasion to observe, "[i]n a complex and litigious society, procedural anarchy cannot be condoned." Nasser v. Isthmian Lines, 331 F.2d 124 (2d Cir. 1964).

Under the circumstances, the award of summary judgment was entirely proper, and the judgment is affirmed.