Ronald G. SCITTARELLI

v.

John MANSON et al.

Civ. No. H–74–163.

United States District Court,
D. Connecticut.

March 7, 1978.

John A. Carrozzella, Wallingford, Conn., for plaintiff.

Stephen J. O'Neill, Cornelius F. Tuohy, Asst. Attys. Gen., Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

Plaintiff, formerly a prisoner at the Connecticut Correctional Institution at Somers, seeks to recover for injuries he sustained while he was incarcerated. This action was begun after he had been released from custody and had become a citizen of Rhode Island. Diversity jurisdiction exists.

### I.

Plaintiff's injuries were sustained early in the evening of May 22, 1972, when he was in a large recreation yard at the prison just prior to the beginning of a baseball game between the Somers team and a "farm" team of prisoners from the Enfield (lesser security) branch of the Connecticut Correctional Institution. The game was scheduled to begin at about 6:00 p. m. There were some 450 to 500 of the 983 inmates at Somers out in the yard, which covers some eight acres. About 30 to 40 blacks were together in a group near the bleachers while the farm team was engaged in warm-up practice on the East Diamond. When they finished they walked to the Large Diamond where the game was to be played. It was then that this group of blacks walked briskly to where the bats were lying and three or four of them picked up bats. Observing this, Acting Supervisor

Captain Morgan and Lt. Stolinas went up to the group and tried to stop them from getting the rest of the bats. One inmate swung a bat at Lt. Stolinas, and Capt. Morgan was actually struck on the back. The officers then ran back to the gate. As soon as he could, Capt. Morgan left the yard and proceeded to the Captain's Office from where he coordinated emergency measures to dispatch additional guards and state police to the recreation yard to confine and quell the disturbance. Throughout the incident correctional officers already in the area remained in the recreation yard attempting to bring the disturbance under control.

Thus began an attack on the officers which continued for another 15–20 minutes before being brought under control, but not before ten correctional officers had sustained injuries, some of them serious, at the hands of the bat wielders. During the period of the "incident," Nelson Boiteau, Correctional Officer II, pursuant to instructions from Lt. Greely, opened the gate to allow those inmates who came up to it to go through. As he did so, he was hit from behind and knocked down. When he started to get up he was hit again. After he managed to get up he was hit several more times. He was taken to the hospital. Lt. Greely also was rushed to the hospital in critical condition. The main targets of the attacking inmates were the correctional officers. No white inmate was injured.

The plaintiff alleges that when the disturbance began he was playing volleyball, and when he observed what was happening he attempted to escape possible danger by fleeing from the yard to the main cell block. He further alleges that "[a]t said time and place the defendants negligently caused or permitted the gate to be closed. . . ." and "having no other avenue of escape, [he] thereupon scaled a fence in order to flee said riot, and in so doing, was caused to fall, breaking both legs, and was otherwise injured."

He was taken on a stretcher to the prison hospital where he was admitted at about 7:00 p. m. This is a 60-bed hospital, which has membership in the American Hospital Association and conforms to that organization's standards relative to personnel and equipment. It has an operating room, an X–ray department, and its staff includes three physicians, nurses, technicians and other supportive personnel.

The plaintiff's injuries consisted of a bilateral comminuted fracture of the os calci (heel bone) and injuries to the soft tissues of the left foot. Initially his ankles were extremely swollen and ecchymotic; consequently immobilization was first applied, with bed rest and elevation of his leg. As the swelling was reduced, other methods of immobilization were employed. On June 1, an X–ray showed the fracture in the right foot, and on June 2 he was transferred to McCook Hospital, where a closed reduction was carried out and short casts applied. The procedure was uneventful. On June 7 he was returned to the Somers hospital where he remained until August 29, 1972. The healing process was medically uneventful and successful. He was seen by an orthopedist weekly. He was examined on December 10, 1973 by Dr. Ritland, an orthopedist, who estimated that he had a physical impairment of 35 percent of the leg on the right, and 10 percent of the leg on the left. This impairment was a natural consequence of the type of injury the plaintiff had sustained. The impairment was not related to the treatment he received, which treatment was in all respects proper, adequate and competent.

## II.

In effect, the plaintiff alleges two claims. The first is that the prison authorities failed to take adequate steps to prevent the injuries he sustained when he fell from the fence. The second claim is that the injuries he sustained from the fall were exacerbated by the failure to provide him with adequate medical care.

Each of the foregoing claims is presented under two separate causes of action. First plaintiff contends that the defendants failed in their obligation under state law to exercise reasonable care to prevent both

282

sets of injuries. Secondly, he claims that the Civil Rights Act, 42 U.S.C. § 1983, provides a cause of action because the deprivation by state officers of his constitutional rights caused both aspects of the injuries for which he seeks compensation. These causes of action will be separately considered.

### The State Cause of Action

■ Jurisdiction to entertain this cause of action is founded on the diversity of the parties. 28 U.S.C. § 1332.[1] It is well established that in diversity cases a federal court sits as another court of the state. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, ". . . federal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." *Cf. Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965). These two versions were put together in *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945) where the Court said:

". . . since a federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State."

In invoking the law of Connecticut to afford him relief, the plaintiff is squarely confronted with § 4–165 of the Connecticut General Statutes, which provides:

"No state officer or employee shall be personally liable for damage or injury, not wanton or wilful, caused in the performance of his duties and within the scope of his employment. Any person having a complaint for such damage or

injury shall present it as a claim against the state under the provisions of this chapter. For the purposes of this section 'scope of employment' shall include, but not be limited to, representation by an attorney appointed by the public defender services commission as a public defender or assistant public defender of an indigent accused or of a child on a petition of delinquency, and representation by such other attorneys, referred to in section 1 [of this act], of state officers and employees, in actions brought against such officers and employees in their official and individual capacities; provided such· actions arise out of the performance of duties within the scope of employment of such officers or employees."

■ The complaint alleges, and the affidavits in support of the defendants' motion for summary judgment confirm, that each of the named defendants was a "state officer or employee." Furthermore, not only does the complaint allege that "[t]he defendants performed each and every alleged act or omission in their said official capacity" (¶ 11 of the complaint), its allegations sound only in negligence.[2]

As held by the Appellate Session of the Superior Court on appeal from the Court of Common Pleas, in *Tucker v. White*, 33 Conn.Sup. 546, 548, 359 A.2d 190, 192, 38 Conn.L.J. No. 1 at 14, 15 (1976): "The statute bars judicial consideration of any such claims and relegates them to the administrative process." The Supreme Court made it clear in *Guaranty Trust Co. v. York*, supra, 326 U.S. at 110, 65 S.Ct. at 1470:

"Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely for-

---

1. Title 28 U.S.C. § 1332(a)(1) provides:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
(1) citizens of different States . . . ."

2. *E. g.* ¶ 18 of the complaint: "As a direct result of the defendants' *negligent* acts, the plaintiff did suffer . . . injury and pain"; and ¶ 22: "As a direct result of defendants [*sic*] *negligent* acts and omissions in treating the original injuries . . . ." (emphasis added).

mally or negligibly.[3] As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law." (citation omitted).

It follows that the plaintiff's claims under state law must be dismissed.

### The § 1983 Claim

Even though barred by state law from asserting his claims that the defendants should respond in damages for the injuries he sustained which resulted from their negligent failure to prevent them, as well as additional damages for their failure to provide adequate medical care in the treatment of them, plaintiff contends that he can recover such damages under the Civil Rights Act, 42 U.S.C. § 1983. Section 1983 provides a cause of action for deprivation of federal constitutional rights. It is generally recognized, on grounds of policy and legislative history of the Civil Rights Acts, that the deprivation of a federal right is qualitatively different from a mere tort, *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Martinez v. Mancusi*, 443 F.2d 921, 923–24 (2d Cir. 1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971); *see generally Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and should not be circumscribed by local law, especially since that body of law is directed to the redress of injuries caused by private persons rather than persons clothed with the authority of the state. *Monroe v. Pape*, 365 U.S. 167, 196 & n.5, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring).

Assuming, arguendo, that Connecticut's statutory immunity afforded its employees is not available to them as a defense against § 1983 liability, the question of whether the defendants' conduct violated the plaintiff's constitutional rights remains.

Analytically, a distinction may be drawn between the duties of prison personnel to maintain discipline and security among inmates and their duty as custodians to provide conditions essential to sustain the lives of inmates. *See Bonner v. Coughlin*, 545 F.2d 565, 575–76 (7th Cir. 1976) (*en banc*) (Swygert, J., dissenting). However, in either case these duties must be fulfilled without violating the eighth amendment's prohibition against cruel and unusual punishment. It is settled that prison officials may be held liable under 42 U.S.C. § 1983 to state prisoners for injuries resulting from conduct or conditions of confinement which violate the eighth amendment prohibition against cruel and unusual punishment. *See Johnson v. Glick, supra*; *Jordan v. Fitzharris*, 257 F.Supp. 674 (N.D.Cal.1966). The statement in *Weems v. United States*, 217 U.S. 349, 368, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910) that "[w]hat constitutes a cruel and unusual punishment has not been exactly decided" is no longer true. After considering the context of "cruel and unusual punishment" in light of its historical background, an authoritative definition of the phrase has recently evolved. *See Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). But concern in this case is not so much with whether the injury amounted to "unnecessary and wanton infliction of pain," *id.* at 173, 96 S.Ct. at 2925, as with what standard to apply in determining whether the duty to prohibit such injury was violated.

"Ordinarily, where a state official has been sued concerning some matter in which he represents the state and the state, though not a named defendant, is the real party against whom relief is sought, so that the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability, the suit is, in effect, one against the state and cannot be maintained without its consent."

---

3. Unlike the statute of limitations of the State of New York in a suit between private litigants, which the Supreme Court held in *Guaranty Trust, supra*, 326 U.S. at 110–11, 65 S.Ct. 1464, that the Court of Appeals could not refuse to enforce because it regarded it as inequitable, § 4–165 vitally affects the State of Connecticut. Connecticut has always given a wide reading to the doctrine of sovereign immunity. *See Anderson v. Argraves*, 146 Conn. 316, 320, 150 A.2d 295, 297:

■ Based upon the current definition of cruel and unusual punishment the Supreme Court has recently formulated the standard which should be applied to determine whether conduct of prison officials in failing to provide medical care to prisoners in their custody will support a § 1983 claim for damages. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle* the Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia*, [428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)] proscribed by the Eighth Amendment." *Id.* Dimensionality will not be lost if the same standard is adopted to test whether the state authorities breached their duty to prevent conduct of other inmates from causing injury to him, *i. e.*, was there "deliberate indifference" to a risk that serious injuries might be inflicted upon him.

From the facts as set forth in part I of this opinion it is clear that neither claim of the plaintiff is sufficient to support a claim under § 1983. The plaintiff alleges that while he was in the recreation yard playing volleyball "the defendants negligently caused or permitted a disturbance or riot in said yard," and that "fearing for his life, [he] attempted to escape danger by fleeing from said yard into the main cell block." He continues, "the defendants negligently caused or permitted the gate to be closed," and "having no other avenue of escape, [he] thereupon scaled a fence in order to flee said riot, and in so doing, was caused to fall, breaking both legs . . . ."

It is not alleged, nor is there any indication that the defendants knew, or should have known, of the fracas until it actually occurred. In addition to what has been related in part I, affidavits submitted by defendants in support of their motion for summary judgment establish that as soon as there were any indications that some inmates were likely to attack fellow inmates the defendants took immediate steps to prevent any such attack from occurring. The fact that ten officers received injuries at the hands of the attacking inmates and brought the whole melee under control within 20 minutes puts the contention that defendants were even negligent in failing to protect him from being injured by other inmates beyond the bounds of probability. The steps taken to man the gates so as to permit inmates to leave the yard were adequate. The correctional officer at the gate, Leon Boiteau, had been instructed to let those inmates through who came up to it and wanted to go through. Neither he nor Lt. Greely, who gave him those instructions, are defendants in this case. Both Boiteau and Greely were struck several times and so severely injured that they had to be taken to the hospital for treatment.

■ In light of the foregoing facts there is no basis for arguing that the injuries sustained by the plaintiff were inflicted by any of the prison personnel as cruel and unusual punishment in violation of the eighth amendment. *See Williams v. Field*, 416 F.2d 483 (9th Cir. 1969), *cert. denied*, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970). None of the *named* defendants undertook or were responsible for the gate-keeping chore. Nor did any defendant direct the plaintiff to try to scale the fence from which he fell.

Here, under all the circumstances, there was neither "deliberate indifference" to the risk of injuries being inflicted upon the plaintiff by fellow inmates, nor inaction to prevent them from occurring as soon as the risk became apparent. *Cf. Woodhous v. Virginia*, 487 F.2d 889 (4th Cir. 1973).

■ The plaintiff's § 1983 claim based on the claimed insufficiency of the medical care he received is also necessarily grounded on a contention that the care he received was so inadequate as to constitute a violation of the eighth amendment. In the face of the uncontroverted facts as set forth in the affidavits of the attending doctors and the hospital record, a contention that there was even negligence would be insupportable. By no stretch of the imagination could the care he received be regarded as cruel and unusual punishment in violation of the

eighth amendment under the standard of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See Church v. Hegstrom*, 416 F.2d 449 (2d Cir. 1969); *cf. Page v. Sharpe*, 487 F.2d 567 (1st Cir. 1973); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970); *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970).

### *Summary Judgment*

Whatever facts have been detailed above are based upon affidavits and hospital and prison records attached thereto which would be admissible at trial. Rule 56(e), Fed.R.Civ.P. There is no genuine issue as to any fact which is material. Rule 56(c), Fed.R.Civ.P.

Since December 30, 1976, two motions by the plaintiff for extensions of time until June 2, 1977, for filing a brief and counter affidavits were granted. No counter affidavits have been filed. In the brief which he has filed, the plaintiff relies upon this court's earlier denial of the defendants' motion to dismiss and argues that "[t]he issue of the existence or non existence [*sic*] of defendant's [*sic*] negligence is the very issue being litigated herein and is not a proper issue to be determined on a motion for Summary Judgment."

Rule 56[4] does not "permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations." *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). *See also Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir. 1972); *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972); *Dressler v. MV Sandpiper*, 331 F.2d 130 (2d Cir. 1964).

"[W]here the moving party properly shoulders his burden, the opposing party must either come forward with some proof that raises a genuine factual issue or, in accordance with Rule 56(f), show reasons satisfactory to the court why it is presently not forthcoming." 6 *Moore's Federal Practice* ¶ 56.15[5] at 56–561 (2d ed. 1948 & Supp. 1976).

The plaintiff does not claim that he lacks access to appropriate evidence, *see Schoenbaum v. Firstbrook*, 405 F.2d 215 (2d Cir. 1968) (*en banc*), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), and no reason is given for his failure to "respond with specific facts showing a genuine issue for trial." *Gates v. Ford Motor Co.*, 494 F.2d 458, 460 (10th Cir. 1974); *cf. Coniglio v. Highwood Services, Inc.*, 495 F.2d 1286, 1292–93 (2d Cir.), *cert. denied*, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974).

Enter judgment in favor of the defendants.

SO ORDERED.

---

4. In relevant part, Rule 56(e) provides:
   ". . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."