949 F.2d 396
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald C. COWELL, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION; Leggett & Platt, Incorporated,
Defendants-Appellees.
 No. 91-2326.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided Dec. 11, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CA-90-1276-A)
 Argued: David Charles Masselli, Masselli & Lane, P.C., McLean, Va., for appellant; John Foster Anderson, McGuire, Woods, Battle & Boothe, Alexandria, Va., for appellee.
 On Brief: Charles F. Perry, McGuire, Woods, Battle & Boothe, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 On September 18, 1990 Appellant, Ronald C. Cowell filed suit against Appellee, General Motors Corporation ("GM") in the Alexandria Division of the United States District Court for the Eastern District of Virginia. Cowell alleged negligence and breach of warranty by GM with respect to the design, manufacture and construction of a 1986 Chevrolet Astro minivan that Cowell was driving when he was struck from behind on October 3, 1988.[1] On October 22, 1990, GM filed a motion to dismiss Cowell's complaint and on December 26, 1990 filed a motion for summary judgment based upon the fact that Cowell previously had executed two general releases in conjunction with a settlement between himself, the driver of the automobile that hit him, the driver's insurance company, and his own insurance company. GM argued that the general releases, by their terms, explicitly released all parties, whether known or unknown, in conjunction with the October 3, 1988 accident. Thus, GM contended that Cowell's suit against it was barred. The district court ultimately agreed, granting GM's motion for summary judgment and dismissing Cowell's suit. This appeal follows.
 
 I.
 
 2
 The case at bar arose from an automobile accident that occurred on October 3, 1988, when the vehicle Cowell was operating was rearended by an automobile operated by K.T. Lee ("Lee"). Cowell sustained severe injuries as a result of the accident. In May of 1989, Cowell filed suit against Lee in Fairfax Circuit Court. Lee's insurance carrier, State Farm Mutual Insurance Company ("State Farm"), retained attorney David A. West to represent Lee in the suit. Cowell also made a claim under the underinsured coverage provision of his own insurance policy that was carried by Erie Insurance Company ("Erie").
 
 
 3
 In April of 1990, Cowell agreed to settle his claims against Erie, Lee, and State Farm in exchange for a payment of $50,000 from Lee's insurance carrier, State Farm, and a payment of $47,500 from Erie, Cowell's own insurance company. In conjunction with the settlement, Cowell executed two general releases.
 
 
 4
 Four months later, Cowell brought the present action against GM, alleging that in manufacturing the minivan Cowell was operating at the time of the October 3 accident, GM had failed to equip the minivan with a driver's side head restraint and that, as a result, the injuries Cowell sustained in the accident were enhanced. Attached to Cowell's complaint were the two previously executed general releases. Initially, GM filed a motion to dismiss the complaint based upon the two general releases. The district court, however, held that in light of Lemke v. Sears, Roebuck & Co., 853 F.2d 253, 255 (4th Cir.1988), the scope of the general releases could not be decided without consideration of evidence of the intent of the parties to the releases.
 
 
 5
 Subsequently, GM filed a motion for summary judgment supported with the affidavits of the attorneys who had drafted, for Lee and Erie, the two general releases at issue in the case. Each of the attorneys testified that the releases were intended to do exactly what they purported to do--release all parties, whether known or unknown, from liability to Cowell for the October 3 accident. Cowell filed a motion to strike the affidavits that was denied by the district court. Following a hearing, the district court granted GM's motion for summary judgment, finding that Cowell had released his claims against GM. Cowell has appealed both the denial of the motion to strike and the granting of the motion for summary judgment.
 
 
 6
 In reviewing the grant or denial of a summary judgment motion, appellate courts conduct a de novo review under the same general standard employed by a trial judge under Rule 56(c) of the Federal Rules of Civil Procedure. Higgins v. E.I. Du Pont de Nemours Co., 863 F.2d 1162, 1166-67 (4th Cir.1988). Under Rule 56(c), courts are required to grant summary judgment upon motion if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). All inferences as to the underlying facts must be drawn and considered in the light most favorable to the non-movant. Smith v. University of North Carolina, 632 F.2d 316, 338 (4th Cir.1980). Disposition by summary judgment is appropriate, however, where the record as a whole could not lead a rational juror to find for the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 II.
 
 7
 The issue in the instant case involves the effect of Cowell's general release upon his claim against GM, a party not mentioned by name in the general releases. State law governs the substantive rights of the parties to the suit. Nuer v. Kawasaki Motors Corp., 830 F.2d 535, 538 (4th Cir.1987), cert. denied 485 U.S. 905 (1988). Because the accident occurred in Virginia, the law of Virginia governs. See id.
 
 
 8
 Until 1979, Virginia adhered to the strict common law rule that the release of one joint tortfeasor operated as a release of all. Id. at 539 (citing Wright v. Orlowski, 235 S.E.2d 349, 352 (Va.1977)). In 1979, however, Virginia provided by statute that a release given in good faith to one joint tortfeasor would not discharge other joint tortfeasors unless its terms so provided.[2]
 
 
 9
 Whether an unnamed party is discharged by a release "is a question that can be answered only after considering all relevant evidence on the actual intent of the parties to the release." Lemke v. Sears, Roebuck & Co., 853 F.2d 253, 255 (4th Cir.1988). Moreover, parol evidence is admissible to clarify the intent of the parties because the Virginia Supreme Court has held the parol evidence rule inapplicable in a dispute between "a party to a writing and a stranger thereto." McComb v. McComb, 226 Va. 271, 307 S.E.2d 877, 879-80 (1983). Here, the district court was correct in holding that, in light of Lemke, resolution of the issue as to the scope of the general releases was governed by the intent of the parties who executed the releases.
 
 
 10
 The district court went on to consider the affidavits of Robert W. Dowler, the attorney for Erie, and David A. West, the attorney for Lee,[3] in determining that the releases barred the instant suit against GM. The district court was persuaded by the Dowler and West affidavits, which stated that the attorneys, in drafting the releases, intended to do exactly as the plain language indicated--release all persons, firms and corporations who might be claimed liable for any claims arising out of the accident. In addition, West testified that he intended the release to discharge all tortfeasors so as to protect the right to pursue a contribution claim against any other tortfeasor and to protect his client from having a contribution claim brought against him. The district court also emphasized the broad and explicit language of the two releases and the fact that Cowell's own attorney stated, prior to execution of the release, by letter that Cowell was willing to settle and to execute a "general release." Ultimately, the district court concluded that the record as a whole would not allow a rational juror to find for Cowell because the uncontroverted evidence indicated that all of the parties, except Cowell, himself, intended the releases to extend to any other tortfeasors, whether named or not.
 
 
 11
 First, Cowell has claimed that the district court was erroneous in denying his motion to strike the Dowler and West affidavits because they were not based on personal knowledge as required by Rule 56(e) of the Federal Rules of Civil Procedure. Moreover, Cowell asserts that the intent of the attorneys who drafted the releases is irrelevant to the suit because such intent cannot be imputed to the settling parties.
 
 
 12
 It is well-settled that, in order to bind a client, an attorney's action must be within the scope of the attorney's authority. Virginia Concrete Co. v. Board of Sup'rs, 197 Va. 821, 91 S.E.2d 415, 419-20 (1956); Virginia Elec. & Power Co. v. Bowers, 181 Va. 542, 25 S.E.2d 361, 363 (1943). While an attorney acting as his client's agent may not compromise his client's claim or surrender any substantive right without the client's consent,[4] once such consent is given, the attorney has authority to effectuate settlement. Cowell does not contend that the attorneys were not authorized to settle the case on behalf of their clients. Thus, the proper effectuation of an agreed upon settlement was within the authority that Erie, Lee, and State Farm conferred upon their attorney in authorizing the settlement of Cowell's claim. Accordingly, it was proper for the district court to consider the attorneys' affidavits. As the drafters of the general releases at issue, the attorneys certainly had personal knowledge of the facts testified to in the affidavit.
 
 
 13
 In further support of his contention that the district court should have struck the Dowler and West affidavits, Cowell has maintained that the attorneys' affidavits contained merely legal arguments and were not based on personal knowledge. Cowell cites Dressler v. MV Sandpiper, 331 F.2d 130 (2nd Cir.1964) for the proposition that, as such, the affidavits are inadmissible. Unlike the attorney affidavit in Dressler, the Dowler and West affidavits are based upon the attorneys' personal knowledge and experience as the drafting attorneys of the releases in question. Moreover, the affidavits do not contain legal arguments, they simply state the drafting attorneys' intent in crafting the language of the releases at issue in the present case. Thus, the Dressler holding does not prevent the court from considering the affidavits. Cowell makes much of the fact that no evidence was introduced of the other settling parties' actual intent. However, it was up to Cowell to demonstrate that the scope of the unambiguous general releases was not as broad as its language indicates. As the district court correctly noted, under Virginia law, "a release is just another contract in which the intent of the parties is to be derived from the face of the instrument as a whole." Virginia Impression P carried the burden of demonstrating an issue of fact with respect to the scope of the unambiguous releases. Lemke has not provided support for a contrary position. Rather, the Lemke court held (in a factually similar situation) that the district court "erred in basing summary judgment solely upon the four corners of the [releases]," and that the court should have allowed the introduction of extrinsic evidence to show whether the parties intended to release two unnamed tortfeasors. Lemke, 853 F.2d at 255 (emphasis added). Lemke can further be distinguished on the ground that the plaintiff in Lemke had already filed a suit against a joint tortfeasor prior to signing the general release at issue in that case. Thus, the plaintiff in Lemke created an issue of fact with respect to the other settling parties' intentions in executing the general releases.
 
 
 14
 Here, unlike Lemke, the district court properly considered the Dowler and West affidavits, in addition to the clear language of the releases, in granting summary judgment. Moreover, the district court reasonably relied upon the letters of Cowell's own attorney which stated that Cowell would execute "general releases" in conjunction with the settlement.
 
 
 15
 Examining the language of the releases in question, it seems apparent that the releases could not have been drawn more broadly. The release Cowell executed with Erie provides, in pertinent part, that Cowell:
 
 
 16
 released and discharged and by these presents do for myself, my heirs, executors, administrators, and assigns release and forever discharge the said Payer and all other persons, firms and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 3rd day of October, 1988, at Braddock Road, Fairfax County, Virginia....
 
 
 17
 I further understand that this release is made as a compromise t (sic) avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including future developments thereof, in any way growing out of or connected with said accident....
 
 
 18
 [A]nd that in determining said sum there has been taken into consideration the fact that serious or unexpected consequences might result from the present injuries, known or unknown, from said accident, and it is therefore specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said accident.
 
 
 19
 (Emphasis added).
 
 
 20
 Similarly, the release Cowell executed in conjunction with his settlement with State Farm and Lee, explicitly stated that Cowell:
 
 
 21
 hereby releases and forever discharges Ki Taek Lee and Jung Lee their heirs, administrators, agents, and assigns and all other persons, firms or corporations liable or, who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 3rd day of October, 1988 at or near Braddock Road in Fairfax, Virginia.
 
 
 22
 Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.
 
 
 23
 (Emphasis added).[5]
 
 
 24
 Considering the extremely broad language contained in both releases, which clearly indicates that all parties are to be released from liability to Cowell stemming from the October 3 accident, to create an issue of fact with respect to the scope of the releases, Cowell was required to do more than offer his own unilateral intent in executing the aforementioned releases. While there may be a dispute as to whether Cowell intended to release GM, his unilateral mistake is insufficient to overcome the substantial evidence that the documents he executed were general releases and presumptively were intended to be such by the other settling parties. See Virginia Impressions, 448 F.2d at 265. Thus, the district court properly awarded summary judgment to GM because the general releases barred all claims by Cowell arising out of the October 3, 1988 accident.
 
 
 25
 Accordingly, the judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Cowell also sued Leggett & Platt, Inc. in the same action, however, he voluntarily dismissed his claims against Leggett and Platt upon his discovery that it did not outfit the minivan involved in the present litigation
 
 
 [2]
 The Virginia statute provides, inter alia:
 When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death: it shall not discharge any of the other tort-feasors from liability for the injury, property damage or wrongful death unless its terms so provide....
 Va.Code § 8.01-35.1.
 
 
 [3]
 As previously mentioned, Lee's insurance carrier, State Farm, retained the attorney on Lee's behalf pursuant to the terms of Lee's insurance policy
 
 
 [4]
 Virginia Concrete Co. v. Board of Sup'rs, 197 Va. 821, 91 S.E.2d 415, 420 (1956)
 
 
 [5]
 While it is not necessary to the result we have reached, it is not amiss to note that Cowell, in his own attorney's office, perused the State Farm/Lee release before executing it