303 F.2d 494
 133 U.S.P.Q. 633
 COMMUNITY OF ROQUEFORT, Societe Auxiliaire de L'Agriculture
& de L'Industrie du Sud-ouest de La France, Societe Anonyme
des Caves et des Producteurs Reunis de Roquefort, on behalf
of self and all others similarly situated, and Frenex
Distributors, Inc., Plaintiffs-Appellees,
v.
WILLIAM FAEHNDRICH, INC., Defendant-Appellant.
 No. 322, Docket 27338.
 United States Court of Appeals Second Circuit.
 Argued April 12, 1962.
Decided June 6, 1962.
 
 Frank O. Fredericks, new York City (Frank & Fredericks, New York City, and Lawrence W. Pollack, New York City, of counsel), for plaintiffs-appellees.
 Murray I. Sommer, New York City (Sommer & Sklar, New York City), for defendant-appellant.
 Before LUMBARD, Chief Judge, and SWAN and KAUFMAN, Circuit Judges.
 KAUFMAN, Circuit Judge.
 
 
 1
 The Community of Roquefort (hereafter sometimes referred to as Community), a municipality in France, is the holder of a certification mark 'Roquefort' for cheese, which is registered in the United States Patent Office under Section 4 of the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. 1054. Together with a French cheese exporter, another French agent, and an American cheese packaging concern, the Community filed a complaint against William Faehndrich, Inc. (hereafter referred to as Faehndrich), a New York cheese importer. The complaint alleged, inter alia, that Faehndrich was infringing the Community's 'Roquefort' certification mark; and, in general, it sought to enjoin Faehndrich from selling cheese not produced in accordance with that mark but labeled or represented as 'Imported Roquefort Cheese.'[1] Plaintiffs moved for summary judgment. At the same time they announced that if relief were granted on the Community's cause of action for infringement, the other claims would be withdrawn. The defendant denied infringement, and filed a cross motion for summary judgment. From a judgment in favor of the Community of Roquefort, and the issuance of a permanent injunction against continued infringement of the certification mark, the defendant Faehndrich appeals.[2]
 
 
 2
 It appears that for centuries there has been produced and cured in the natural limestone caves in and about the municipality of Roquefort a sheep's milk bluemold cheese,[3] which has veen marketed in this country for many years as 'Roquefort Cheese.' In an effort to protect themselves against unfair competition, producers of such French 'Roquefort Cheese' frequently have asked our courts to prevent misleading use of the 'Roquefort' designation. See, e.g., Douglas v. Mod-Urn Cheese Packing Co., Inc., 161 Misc. 21, 290 N.Y.S. 368 (Sup.Ct.1936); Douglas v. Newark Cheese Co., Inc., 153 Misc. 85, 274 N.Y.S. 406 (Sup.Ct.1934). For similar reasons the Community of Roquefort, in 1953, obtained a certification mark so that the term 'Roquefort,' as applied to cheese, would be used exclusively:
 
 
 3
 '* * * to indicate that the same has been manufactured from sheep's milk only, and had been cured in the natural caves of the Community of Roquefort, Department of Aveyron, France, in accordance with the historic methods and usages of production, curing and development which have been in vogue there for a long period of years.'
 
 
 4
 Since that time the Community has been diligent in protecting the mark.
 
 
 5
 Nevertheless, in 1960, Faehndrich imported into the United States a quantity of sheep's milk blue-mold cheese, labeled 'Imported Roquefort Cheese' (at Faehndrich's direction), which had been produced in Hungary and Italy. Of course, it was not (and could not be) produced by authority of the Community of Roquefort under its mark. When imported, Faehndrich's cheese was packaged in a manner clearly indicating the countries of origin. On the other hand, when Faehndrich prepared the cheese for resale, the labels prominently displaying the words 'Product of Italy' and 'Product of Hungary' were replaced with new wrappers printed 'Imported Roquefort Cheese' and 'Made from Pure Sheep's Milk Only.' without any indication of origin. Hence, there was nothing on the wrappers which would suggest to the retail-buying public that Faehndrich's cheese came from Hungary or Italy.
 
 
 6
 In order to clairfy our discussion of the single question presented by this appeal, i.e., whether Judge Metzner was correct in granting the Community of Roquefort's motion for summary judgment, it will be helpful to summarize the law applicable to certification marks such as the mark involved in this case, and by way of explanation, to point out certain distinctions between trade-marks on the one hand, and certification marks on the other.
 
 
 7
 Until the Lanham Act of 1946, a geographical name could not be registered as a trade-mark. This prohibition operated to prevent a single producer from appropriating the name of a particular place or area in which he was located to the exclusion of other and similarly situated producers. Canal Co. v. Clark, 13 Wall. 311, 80 U.S. 311, 20 L.Ed. 581 (1872). 'If the name was to be found in an atlas * * *, that was sufficient to preclude regustration.' Robert, Commentary on the Lanham Trade-Mark Act, 15 U.S.C.A. following 1024, 265, 271 (1948). Nevertheless, if a geographical name which had become distinctive of certain goods was registered by oversight, it was protected against infringement, Baglin v. Cusenier Co., 221 U.S. 580, 591-593, 31 S.Ct. 669, 55 L.Ed. 863 (1911); moreover, if the name acquired such new significance as an indication of origin of goods, i.e., a secondary meaning, its use was protected from unfair competition even though it could not be registered as a trade-mark. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 674, 21 S.Ct. 270, 45 L.Ed. 365 (1901); Vandenburgh, Trademark Law and Procedure, 4.60, 4.70 (1959).
 
 
 8
 Section 2(e) of the Lanham Act continued to prohibit registration of a geographical name as a trade-mark, if 'when applied to the goods of the applicant (it) is primarily geographically descriptive * * *,' 15 U.S.C.A. 1052(e)(2), unless such a name 'has become distinctive of the applicant's goods * * *,' 15 U.S.C.A. 1052(f). Under the Lanham Act, therefore, if a geographical name acquires a secondary meaning, it can be registered as a trademark. Vandenburgh, op. cit. supra.
 
 
 9
 In addition to this extension of trade-mark law, the Lanham Act created an entirely new registered mark which was denominated a 'certification mark.' 15 U.S.C.A. 1054; Robert, op. cit. supra, at p. 270.
 
 
 10
 'The term 'certification mark' a mark used upon or in connection with the products * * * of one or more persons other than the owner of the mark to certify regional or other origin, material, mode of manufacture, quality, accuracy or other characteristics of such goods * * *' 15 U.S.C.A. 1127.
 
 
 11
 A geographical name does not require a secondary meaning in order to qualify for registration as a certification mark. It is true that section 1054 provides that certification marks are 'subject to the provisions relating to the registration of trademarks, so far as they are applicable * * *.' But section 1052(c)(2), which prohibits registration of names primarily geographically descriptive, specifically excepts 'indications of regional origin' registrable under section 1054. Therefore, a geographical name may be registered as a certification mark even though it is primarily geographically discriptive.[4] This distinction, i.e., that a geographical name cannot be registered as a trade-mark unless it has secondary meaning, but can be registered as a certification mark without secondary meaning, has significance. A trade-mark gives a producer exclusive rights; but a certification mark, owned by a municipality, such as Roquefort, must be made available without discrimination 'to certify the goods * * * of any person who maintains the standards or conditions which such mark certifies.' 15 U.S.C.A. 1064(d)(4). See 4 Callmann, Unfair Competition and Trade-Marks 98.4(c) (2 ed. 1950).
 
 
 12
 On the other hand, a geographical name registered as a certification mark must continue to indicate the regional origin, mode of manufacture, etc. of the goods upon which it is used, just as a trade-mark must continue to identify a producer.
 
 
 13
 'When the meaning of a mark that had previously served as an indication of origin changes so that its principal significance to purchasers is that of indicating the nature or class of goods and its function as an indication of origin is subservient thereto, it is no longer a mark but rather is a generic term.' Vandenburgh, op. cit. supra, 9.20.
 
 
 14
 Therefore, if a geographical name which has been registered as a certification mark, identifying certain goods, acquires principal significance as a description of those goods, the rights cease to be incontestable, 15 U.S.C.A. 1065(4), and the mark is subject to cancellation, 15 U.S.C.A. 1064(c); Robert, op. cit. supra, at pp. 280-281.
 
 
 15
 In the present case Faehndrich does not contest the validity of the mark's registration, as to which the Community's certificate of registration is prima facie proof. 15 U.S.C.A. 1057(b). Instead, Faehndrich argues that there is a genuine issue of fact concerning the existence of generic meaning, i.e., whether the term 'Roquefort' has acquired principal significance as a description of blue-mold sheep's milk regardless of its origin and without reference to the method of curing employed in the limestone caves of Roquefort, France. The difficulty with Faehndrich's position, however, is that nowhere in the affidavits submitted below on the motion for summary judgment is there any allegation of facts which suggests that such a genuine issue exists; nor does Faehndrich mark any allegation that is could prove such facts at a trial.[5] The affidavits are barren of any allegations or facts that consumers understand the word 'Roquefort' to mean nothing more than blue-mold cheese made with sheep's milk. Indeed, the Community's affidavits indicate the contrary. They allege that the only other cheese of this nature commercially sold in the United States, a product of Israel, is markerted as 'Garden of Eden-- Heavenly Cheese--Sheep's Milk Blue-Mold Cheese'; that a similar Tunisian product is marketed abroad as 'Bleu de Brebis'; and that the same cheese which Faehndrich imports from Hungary and sells with the label 'Imported Roquefort Cheese' is sold in Belgium as 'Merinofort.' Moreover, we have already noted that producers of French Roquefort cheese have diligently protected the name from unfair competition in this country.[6]
 
 
 16
 The purpose of summary judgment is to dispose of cases in which 'there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Fed.R.Civ.P. 28 U.S.C.A.; see 6 Moore, Federal Practice, P 56.04(2 ed. 1953). Since the object is to discover whether one side has no real support for its version of the facts, the Rule specifically states that affidavits shall 'set forth such facts as would be admissible in evidence.' Rule 56(e), Fed.R.Civ.P. In view of this, we agree with Judge Metzner that Faehndrich 'has failed to show * * * that there is any possibility on a trial that he can raise an issue of fact' in regard to generic meaning.[7]
 
 
 17
 Moreover, since Faehndrich's wrappers indisputably bore the inscription 'Imported Roquefort Cheese,' we believe that the District Court was justified in finding, as a matter of law, that appellant's use of an identical mark on substantially identical goods was 'likely to cause confusion or mistake or to decive purchasers as to the source of the origin of the goods.' 15 U.S.C.A. 1114. Accord, Triumph Hosiery Mills, Inc. v. Triumph International Corp.,191 F.Supp. 937, 940 (S.D.N.Y.1961).
 
 
 18
 We are well aware of the dangers involved in haphazard use of summary judgment procedures. However, summary judgment cannot be defeated where there is no indication that a genuine issue of fact exists; to permit that would be to render this valuable procedure wholly inoperative and to place a 'devastating gloss' on the rule. See Clark, 'Clarifying Amendments to the Federal Rules?' 14 Ohio St.L.J. 241, 249-250 (1953).
 
 
 19
 Affirmed.
 
 
 
 [1]
 Plaintiffs below also alleged that Faehndrich's acts violated an international treaty, constituted unfair competition, and violated the Lanham Act's proscription of false and misleading designations of origin and desceiption
 
 
 [2]
 Judge Metzner did not consider the other claims, which were treated as withdrawn. Community of Roquefort v. William Faehndrich, inc., 198 F.Supp. 291 (S.D.N.Y.1961)
 
 
 [3]
 A French law, adopted in 1925, prohibits the sale of this type of cheese in France unless it is made in that general area according to traditional methods nad standards of production
 
 
 [4]
 Where no prohibition against registration exists in section 1052(e), resort to section 1052(f), which is the 'secondary meaning' exception to section 1052(c), is obviously unnecessary
 
 
 [5]
 It is interesting to note that Faehndrich's statement in compliance with Rule 9(g) General Rules of the Southern District of New York, submitted in connection with the Community's motion for summary judgment, did not allege the existence of a genuine issue of fact relating to generic meaning. Moreover, Faehndrich, in a similar statement submitted with its cross-motion for summary judgment, alleged that no such issue of fact existed. Of course, the Rule 9(g) statement is not a substitute for affidavits alleging facts. It is intended to serve the convenience of the court in pinpointing the issues
 
 
 [6]
 Faehndrich's voluminous affidavits were directed to a showing that there existed a genuine issue of fact concerning the existence of secondary meaning in the term 'Roquefort.' But, as we point out above, existence of secondary meaning (or lack thereof) does not affect the validity of a certification mark
 
 
 [7]
 Community of Roquefort v. William Faehndrich, inc., supra, n. 2, at p. 293 of 198 F.Supp