**MOTION PICTURE ASSOCIATION OF AMERICA, INC., Plaintiff,**

v.

**RATED R CLOTHING, INC., and Biya Katz, an individual, Defendants.**

**No. 86 Civ. 1131 (JFK).**

United States District Court,
S.D. New York.

March 4, 1986.

Nims, Howes, Collison & Isner, New York City, for plaintiff; Andrew Baum, of counsel.

Abady & Jaffe, New York City, for defendants; Matthew G. Dineen, Samuel A. Abady, of counsel.

## OPINION AND ORDER

KEENAN, District Judge:

Plaintiff, whose primary business is operation of the familiar motion picture rating system,[1] moves the Court for a preliminary injunction against defendants, sellers of women's dresses. Plaintiff asserts that by naming its company "Rated R Clothing, Inc.," and using this name on dress labels and other public advertising, defendants are engaging in trademark infringement, false designation of origin, unfair competition, and dilution, in violation of federal and state statutory and common law.

Plaintiff alleges it is being irreparably harmed by the claimed infringement and needs a preliminary injunction to prevent defendants from using its company name, which it asserts infringes plaintiff's registered certification marks. Defendants assert that there is no likelihood of confusion between plaintiff's business and defendants' clothing, because the two products are so dissimilar. Defendants also argue that while plaintiff has two registered marks, neither of the registrations incorporates the word "rated" or uses the letter "R" in combination with that word. Therefore, defendants claim, the dilution argument is unpersuasive.

## BACKGROUND

Plaintiff is a non-profit company called Motion Picture Association of America, Inc. (MPAA), which rates movies G, PG, PG–13, R and X. An arm of MPAA called Classifi-

---

1. The rating categories are G, PG, PG–13, R and X.

cation and Rating Administration (CARA) is responsible for the viewing and rating process. In his affidavit, the Chairman of CARA states that while MPAA has advised on morals in the motion picture industry since the 1920's, CARA was established on November 1, 1968 to administer the newly-invented rating system. (Heffner Aff., ¶ 6). Since that time, CARA has reviewed and rated over 7000 films, of which approximately 45% have been rated R. Plaintiff holds registrations for the certification marks of rating symbols at issue in two forms, "R in a rectangle,"[2] and "R in a box."[3] It does not have any registration for the letter "R" used in conjunction with the word "rated", as employed by defendant in its company name. However, plaintiff asserts, and it is not denied, that it is required to use the word "rated", followed immediately by the appropriate rating symbol, when rated movies are advertised orally on television. (Heffner Aff., Ex. C).

Opinion surveys have shown that 80% of the public aged twelve and over is aware of CARA's symbols. In 1985, adults between 18 and 49 had a greater than 90% awareness of the symbols. (Heffner Aff., ¶ 9).

Over the years since 1968 MPAA has been approached many times by parties interested in using the rating symbols in licensing agreements in connection with sundry items including clothing, bathroom accessories, T-shirts and promotional materials. (Heffner Aff., Ex. E through H). All of the requests have been denied without resort to litigation. In denying licenses, CARA has stated its belief that it would harm the registrations if CARA allowed the symbols to be used for unrelated purposes, so as to make the symbols "gener-

ic". In effect, this appears to be a dilution argument.

On the occasions when parties have used the symbols for commercial advantage without permission to license in advance, they have been requested to cease and desist, and have complied with this request in every case. Exhibits I through M to the Heffner affidavit consist of correspondence relating to unauthorized use in the area of children's toys, hamburger ads, pornographic cakes,[4] and jeans.

Defendants have started a clothing line named Rated R Clothing, Inc.,[5] the president of which is Biya Katz. The founder, vice president and Chief Executive Officer of Rated R Clothing is Chaim Ramar, an Israeli national. He is engaged to Biya Katz. Ramar states that he was "not specifically aware" of plaintiff's roman letter "R", drawn in a box, and sometimes used with the word "rated", "until after my company was solidly in business." (Ramar Aff., ¶ 7). Ramar claims that the "R" as used in defendant company's name stands for Ramar, and "rated" was chosen because, "it was our intention that the women's fashion marketplace would come to regard our ladies apparel as the standard of excellence by which other similar items were 'rated;' i.e. if a dress was rated Ramar—Rated R—it was of fine quality in design, workmanship and value." (Ramar Aff., ¶ 5).

The Court is unconvinced that defendant was not aware of plaintiff's use of the name, principally because, given the high percentage of recognition for plaintiff's symbols, it is too coincidental to be credible that Ramar would have stumbled upon the

---

2. This registered certification mark consists of the letter "R" followed by the phrase: RESTRICTED Under 17 requires accompanying Parent or Adult Guardian.

The mark was registered on May 22, 1973. It is numbered 959,580. (Complaint, Ex. A).

3. This mark is comprised of the single letter "R" in a square border. It bears registration number 1,170,739, and was issued on September 27, 1981. (Complaint, Ex. B).

4. In passing upon this motion and arriving at the decision herein, the Court's knowledge has been expanded. A pornographic cake is a cake formed in a shape which allegedly appeals to the prurient interests of the beholder.

5. The allegedly infringing mark, as described by defendants, consists of an "abstract ink drop or rain drop background, with the phrase 'Rated R' in sloping, cursive script written over and outside the borders of the drops." (Ramar Aff., ¶ 11).

phrase "rated R" without discovery of its common usage.

In late February 1985 Ramar retained a law firm to clear the trade name "Rated R." The search led to discovery of more than one usage of the letter "R" used in conjunction with other words, including the word "rated." Plaintiff's two registrations did not come to light. Among the marks discovered was Charles Pfizer & Co.'s trademark number 911,694 obtained May 18, 1971, for the phrase "Rated R". Ramar obtained Pfizer's permission to use the phrase.

Other companies have registered the mark of "R" inside a box, or in some other configuration. (Ramar Aff., Ex. A).

Ramar says that he and fiancee Katz have invested their entire lives savings of over $500,000 and a year of work in the clothing company. (Ramar Aff., ¶¶ 14–17). They have already used the logo in ads, neon signs at the company showroom, promotional brochures for tradeshows, labels, postcards, hangtags, leaflets, invoices and stationery. This coverage, they claim, has already given meaning to the company's name. They have already obtained purchase orders for $750,000 worth of clothes. (Ramar Aff., ¶ 18). Ramar claims, at the risk of "sounding immodest", that the response to the new line is exceptional for the industry. (Ramar Aff., ¶ 19). He claims that if he is forced to give up the logo now, his company will lose momentum and be destroyed. (Ramar Aff., ¶ 22).

## DISCUSSION

In *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–7 (2d Cir.1979), the Court of Appeals for the Second Circuit stated that:

A preliminary injunction is proper where the plaintiff establishes possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

In the context of a motion made in reference to a tender offer, the Second Circuit has recently held that "the preliminary injunction, which is one of the most drastic tools in the arsenal of judicial remedies (citation omitted) ... must be used with great care...." *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir.1985). Plaintiff must make an extraordinary showing in order for a preliminary injunction to issue.

This case does not fit into the traditional categories of trademark law, and the "likelihood of success" analysis is therefore rather exceptional. CARA argues that the likelihood of confusion aspect of its case is less important than the dilution issue in terms of establishing probable success on the merits. However, both issues must be addressed.

### 1. Likelihood of confusion.

■ Certification marks are defined as follows in § 45 of the Lanham Act, 15 U.S.C. § 1127:

... a mark used upon or in connection with the products or services of one or more persons other than the owner of the mark to certify regional or other origin, material, mode of manufacture, quality, accuracy or other characteristics of such goods or services....

While case law is sparse with respect to the question of when use of a certification mark, as opposed to a trademark, is likely to cause confusion, the Second Circuit in *Community of Roquefort v. William F. Faehndrich, Inc.*, 303 F.2d 494 (1962) upheld a district court's application of the typical standard as used for trademark in the context of certification marks, defining confusion as existing when "likely to cause confusion or mistake or to deceive purchasers as to the source of the origin of the goods." *Roquefort* at 498, citing 15 U.S.C. § 1114(1).

The factors to be considered on a determination of whether likelihood of confusion exists under § 1114 include strength of the marks, similarity between the marks, proximity of the marks, "bridging the gap" between products, actual confusion be-

tween the marks, defendant's intent to deceive or capitalize on the mark, and the sophistication of purchasers of the products.

Plaintiff's mark is arguably quite strong, as the survey results submitted show. It is not unlikely that defendant intended to capitalize on the strength of plaintiff's mark, though this issue would have to be developed at trial. On the other hand, no actual confusion has been demonstrated, and plaintiff states that it does not intend to "bridge the gap" itself by later marketing products like the defendants'. On this issue, however, MPAA argues that to make other products under its registered marks, or to license others to do so, would lead to undesirable dilution and perhaps cause the two "R" marks to become generic. The Court is unable, for lack of evidence, to gauge the sophistication of purchasers in either plaintiff's or defendants' market.

The critical issue on the confusion question appears to be, therefore, the one of similarity between the marks. Plaintiff attempts to fend off defendants' argument that the Rated R Clothing logo is visually distinguishable from the two registered marks. It claims that the marks should be analyzed in terms of the recognized "trilogy" of "sight, sound and meaning," 2 J. McCarthy *Trademarks and Unfair Competition*, § 23:4, and that appearance alone is not determinative. In any case, it argues, the letter "R" is the dominant portion of the mark, and when the marks appear in television listings or on audible commercials, the letter "R" appears alone. Thus, they argue that the "sound" of the mark is likely to be confused as well as the sight. *Grotrian et al. v. Steinway & Sons*, 523 F.2d 1331, 1338 (1975).

Defendants argue that the plaintiff's mark is visually distinguishable from their mark, and that plaintiff has no registration for the oral expression "rated" and cannot seek protection of this sound. While conceding the dominance of the letter "R" in both marks, defendants further argue that plaintiff should not be permitted to "pluck from general use" one of the 26 letters of the alphabet, and attempt to prevent others from using the letter. (Memo in Opposition, p. 12.) Given the variety of registered marks which include the letter "R", (*see* Ramar Aff., Ex. A), it would seem that plaintiff has no special claim to the exclusive use of this letter of the alphabet.

Plaintiff also argues that in the special circumstances of certification marks, the question of confusion should not turn upon visual or oral identity, but confusion as to origin or certification of the alleged infringing product. MPAA fears that the public could be led to believe that it has approved either the dresses themselves, or that it has licensed the line. Defendants' position is that it is highly unlikely that consumers will be led to believe that plaintiff has examined, rated and certified defendants' dresses. *See Underwriters Laboratories, Inc. v. United Laboratories Inc.*, 203 U.S.P.Q. 180 (N.D.Ill.1978).

The Court preliminarily determines that there is no likelihood of confusion or that the public will perceive that plaintiff has entered the licensing field, though it reserves final decision for the future time when more evidence has been submitted as to actual confusion. Based on the evidence now before the Court, it does not appear that plaintiff will prevail on its claim based on likelihood of confusion.

### 2. Dilution.

■ Plaintiff argues that its rating system is considered reliable because of public trust in its accuracy, and that its reputation along these lines will be damaged if the rating marks are used by others. The New York antidilution statute, General Business Law § 368–d, reads:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief ... in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

This section is cited and explicated in *Dallas Cowboy Cheerleaders* at 205, n. 8. Under the statute and case law, *see, e.g. Sally*

*Gee Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624–25 (2d Cir.1983), no direct competition nor likelihood of confusion need be shown if a distinctive mark, having a "secondary meaning" is infringed. *Sally Gee* at 625. Defendants argue that the registered marks of plaintiff, R in a box and R in a rectangle, are not inherently strong, and not of "distinctive quality," since they are not "arbitrary" or "fanciful" and are perhaps simply "descriptive". (Memo in Opposition, p. 13.) Therefore, if this argument is given weight, plaintiff should not receive the benefit of the antidilution law in the absence of competition or confusion.

In other words, if plaintiff's mark is "not so unique and arbitrary as to deserve protection in fields totally unrelated to [its] activities", *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108, 1125 (S.D.N.Y.1981) and is not "suggestive", then success on the merits of the dilution claim is not self-evident. The Court finds that the letter "R", the principal registered portion of the certification mark, whether used in the "box" or "rectangle" format, is not proven at this time to be so distinctive or unique as to warrant protection under § 368–d. *Sally Gee* at 625. As a purely speculative matter, it is conceivable that the phrase "Rated R" connotes, through an arbitrary phrase, certain quality backed by plaintiff's reputation. However, and unfortunately for plaintiff, only the letter "R", and not the phrase "Rated R", has been registered by plaintiff. The letter "R", even in the two specific formats for which registrations exists, is likely to prove to be "descriptive", rather than "fanciful" or "arbitrary". The descriptive symbol is not so clearly protected by the antidilution statute. Furthermore, MPAA has not shown that the reputations of its marks will be "tarnished" by defendants' product line. *Sally Gee* at 625. It is not likely that plaintiff will prevail on the merits of this argument.

## CONCLUSION

Given the high burden of proving likelihood of success on the merits of its claims, the plaintiff has failed to establish that is likely to fall within the antidilution law, or the federal trademark law. Even if sufficiently serious questions going to the merits are shown to exist, such as to further plaintiff's argument under the standard articulated in *Dallas Cowboys Cheerleaders*, plaintiff has not demonstrated to this point that it will suffer irreparable harm if defendant is not enjoined from using its company name. At most, as plaintiff itself asserts, plaintiff would be suspected of having licensed its rating symbols to defendants. This does not constitute irreparable harm. Moreover, given that the standard compels use of a balancing test between the potential harms to movant and respondent, it appears that the risk that defendants' entire business will be halted in its tracks is of greater import than the risk of harm to plaintiff.

The motion for a preliminary injunction is denied. The parties should proceed with discovery at this time. The parties are to appear before the Court for a status conference on April 21, 1986, at 4:00 p.m., in Courtroom 35 of the United States Courthouse, New York, New York.

SO ORDERED.