THIS OPINION IS A
PRECEDENT OF
THE T.T.A.B.

Mailed: April 13, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

Motion Picture Association of America, Inc.

v.

Respect Sportswear, Inc.

———

Opposition No. 91153141
to application Serial No. 75654662
filed on March 5, 1999

———

Andrew Baum of Darby & Darby P.C. for Motion Picture
Association of America, Inc.

Simon V. Haberman of Simon V. Haberman, P.C. for Respect
Sportswear, Inc.

———

Before Hohein, Bucher and Cataldo,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

On March 5, 1999, applicant, Respect Sportswear, Inc.,

a corporation organized under the laws of the State of New

Jersey, filed an application to register on the Principal

Register the mark RATED R SPORTSWEAR ("SPORTSWEAR"

disclaimed) in typed or standard character form, based upon

an allegation of its bona fide intent to use the mark in

commerce on or in connection with "men's and ladies' shirts, pants, ladies' dresses, shorts and jackets."[1]

Registration has been opposed by Motion Picture Association of America, Inc. ("opposer"). As grounds for opposition, opposer asserts that it is a corporation organized under the laws of the State of New York; and that it is the owner of the following certification marks, which it has previously used and registered on the Principal Register:

1)                  RATED R

in typed or standard character form for "entertainment services rendered through the medium of motion pictures" in International Class B and indicating that:

> the mark certifies that the motion picture film, in the opinion of applicant's rating board, is an adult film in some of its aspects and treatment so far as language, violence, nudity and sensuality are concerned, and that because of such elements no one under the age of 17 should be admitted unless accompanied by a parent or guardian;[2]

2)



---

[1] Application Serial No. 75654662.

[2] Registration No. 1436926 was issued on April 18, 1987 with a disclaimer of "RATED" apart from the mark as shown. Section 8 affidavit accepted.

for "entertainment services rendered through the medium of motion picture[s]" in International Class B and indicating that:

> this mark certifies that the motion picture film meets the standards set forth by applicant for R: restricted under 17 requires accompanying parent or adult guardian;[3]

and 3)



for "entertainment services rendered through the medium of motion pictures," in International Class B and indicating that:

> the mark certifies that the motion picture film is, in the opinion of applicant's rating board, an adult film in some of its aspects and treatment so far as language, violence, or nudity and sexuality is concerned, and that because of such elements no one under the age of 17 should be admitted unless accompanied by a parent or guardian.[4]

Opposer alleges that applicant's RATED R SPORTSWEAR mark and opposer's previously used and registered marks are highly similar; that applicant's goods and the services certified by opposer are closely related; that, as a result,

---

[3] Registration No. 0959580 issued on May 22, 1973. Section 8 affidavit accepted; Section 15 affidavit acknowledged. Renewed.

[4] Registration No. 1170739 issued on September 22, 1981. Section 8 affidavit accepted; Section 15 affidavit acknowledged. Renewed.

confusion, mistake and deception are likely among consumers as to the source thereof under Trademark Act Section 2(d); and that opposer will be damaged thereby. Opposer further alleges that its marks are famous and distinctive and were so prior to the filing date of the challenged application; that applicant's mark dilutes the distinctive quality of opposer's marks under Trademark Act Section 43(c)(1); and that opposer will be damaged thereby.

Applicant's answer consists of a general denial of the allegations in the notice of opposition.[5]

## The Record

The record consists of the pleadings, and the file of the involved application. In addition, during its assigned testimony period, opposer took the depositions, with accompanying exhibits, of (i) Joan Graves, an officer of opposer; (ii) Annette McGuire, an employee of opposer's counsel; and (iii) Walter McCullough, the president and chief executive officer of Monroe Mendelsohn Research Incorporated. Opposer also filed a notice of reliance upon

---

[5] Applicant asserted as an "affirmative defense" that the notice of opposition fails to state a claim upon which relief can be granted. Inasmuch as applicant did not file a motion to dismiss the instant opposition on the basis of Fed. R. Civ. P. 12(b)(6), we treat this "defense" as having been waived. In addition, applicant asserted additional "affirmative defenses" that are more in the nature of amplifications of its denials of the salient allegations contained in the notice of opposition. Applicant's motion to amend its answer to assert a counterclaim for cancellation of opposer's pleaded Registration No. 1436926 was denied in a May 26, 2005 Board order.

certified copies of its pleaded registrations, which show that the registrations are subsisting and are owned by opposer; non-confidential portions of the discovery deposition of Mr. Kishan Kriplani, an officer of applicant; copies of third-party registrations for trademarks registered for both motion pictures and wearing apparel; applicant's responses to opposer's Interrogatory Nos. 1, 2, 4, 8, 23, 24 and 25 from opposer's first set of interrogatories; applicant's responses to opposer's second set of interrogatories; and portions of articles from printed publications obtained from the Nexis computer database.

Applicant did not file any testimony depositions in this proceeding (although, as discussed *infra*, it appears that it may have taken such depositions) nor did it introduce any other evidence in its own behalf.

Opposer and applicant filed main briefs on the case, and opposer filed a reply brief.

### Evidentiary Matters

Before addressing the merits of the case, certain evidentiary matters require our attention. In its brief, opposer asserts that applicant conducted testimony depositions but did not file transcripts thereof with the Board. Although opposer did not attach, as an appendix to its main brief, a copy of any notice of testimony deposition

served by applicant, applicant nonetheless does not challenge opposer's assertion that applicant took, but did not file, testimony depositions in this case. In point of fact, applicant is silent in its brief as to whether it took testimony depositions or sought to introduce evidence thereby. However, applicant (brief, p. 13) urges as follows:

> The TTAB should take judicial notice of the Internet search engines, "Google", "Yahoo" and others, which display many millions of references to "RATED R". Most of these references are not related to movie ratings. In addition, Ebay sells items for sale "RATED R", from films to campaign buttons. These facts on the Internet are not subject to reasonable dispute and are capable of accurate and ready determination by going to these search engines.

Opposer asserts in its reply brief that applicant sought to authenticate the same types of evidence in its testimony depositions. Opposer also argues that applicant's request for judicial notice should be denied as improper.

The filing of testimony depositions in inter partes proceedings before the Board is governed by Trademark Rule 2.123(h), which provides as follows:

> All depositions which are taken must be duly filed in the Patent and Trademark Office. On refusal to file, the Office at its discretion will not further hear or consider the contestant with whom the refusal lies; and the Office may, at its discretion, receive and consider a copy of the withheld deposition, attested by such evidence as is procurable.

Thus, the Board may, in its discretion, either require a copy of applicant's withheld deposition(s) or refuse to further hear applicant's arguments on the matter at issue. *See Id.* *See also* TBMP §703.01(l) (2d ed. rev. 2004) and authorities cited therein. In this case, inasmuch as the matter before us is fully briefed and ready for decision, and because opposer does not assert that the testimony or exhibits that applicant has failed to submit are adverse to applicant, we decline to delay the proceeding at this point by requiring applicant to submit copies of its testimony deposition(s) and will instead consider the parties' arguments on the record before us.

With regard to applicant's request for judicial notice, it is settled that the only kind of fact that may be judicially noticed by the Board is a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). *See also Continental Airlines Inc. v. United Air Lines Inc.*, 53 USPQ2d 1385, 1393 n.5 (TTAB 1999). In this case, applicant does not seriously argue, nor do we find, that the "facts" applicant seeks the Board to notice, namely, results from queries of Internet search engines and the Internet

commercial website EBay, are generally known within the territorial jurisdiction of the Board. Moreover, it is settled that due to the transitory nature of Internet postings, materials obtained thereby that cannot readily be corroborated by printed material are not suitable for judicial notice. *See In re Total Quality Group Inc.*, 51 USPQ2d 1474, 1476 (TTAB 1999). *See also* TBMP §704.12 (2d ed. rev. 2004) and authorities cited therein. As such, the "facts" of which applicant seeks judicial notice in this case are not the sort of facts which can be determined by resort to sources the accuracy of which cannot be questioned. Accordingly, applicant's request for judicial notice is denied.

### General Facts

The record shows that opposer is a nonprofit trade organization that promotes the interest of its member companies that are involved in the entertainment industry;[6] that continuously since 1968, opposer has provided a voluntary rating system for theatrical movies; that R was one of the original movie ratings along with G, M, and X; that the ratings presently include G, PG, PG-13, R and NC-17; that the R rating signifies that a film so rated contains adult material and that any child must be

---

[6] Opposer's member companies include Warner Brothers, Disney, Universal, 20th Century Fox, Paramount, MGM and Sony.

8

accompanied by a parent or guardian in order to gain admission to a theater showing such a film; that opposer's ratings and explanations of their meaning are made available on opposer's Internet website, which receives over 135,000 visitors per month; that opposer further makes available information on its ratings in printed informational fliers distributed to movie theaters and also to patrons thereof upon request; that since 1968, opposer has distributed over 2 million such fliers; that once rated, opposer's ratings must be displayed on the rated movies themselves and on all advertisements therefor; that all advertisements for rated movies must receive prior approval from opposer's advertising administration; that theatrical trailers for the rated movies must display the movie's rating; that posters distributed to movie theaters and video rental stores must also display the movie's rating; and that failure to comply with these requirements risks revocation of the movie's rating by opposer.

The record further shows that opposer has rated over twenty thousand films since 1968; that to date, 61 percent of films rated by opposer are rated R; that there are over 35,000 theatrical motion picture screens in the United States; and that opposer's ratings appear on most movie theater marquees containing such screens. The record shows

in addition that theatrical motion pictures are promoted using clothing, including tee shirts and caps.

The record also shows that applicant selected the mark RATED R SPORTSWEAR on the advice of a clothing designer who indicated that the mark would be attractive to customers; and that the clothing identified by the RATED R SPORTSWEAR mark is intended for adults aged 18 to 30.

## Opposer's Standing

Because opposer has properly made its pleaded registrations of record, and further has shown, by its use and registration of marks that are at least arguably similar to applicant's mark that it is not a mere intermeddler, we find that opposer has established its standing to oppose registration of applicant's mark. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); and *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

## Priority of Use

Moreover, because opposer's pleaded registrations are of record, Section 2(d) priority is not an issue in this case as to the marks therein and services certified thereby. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974). We further note that applicant does not contest that opposer has made prior use of the marks in its pleaded registrations.

10

## Likelihood of Confusion

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue. *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Co., Inc.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

The test for determining likelihood of confusion with respect to certification marks is the same as that applied to trademarks, i.e., the *du Pont* analysis. However, because the certification mark owner does not itself use the mark, the question of whether there is a likelihood of confusion is based on a comparison of the mark as applied to the goods or services of the certification mark users. *See DuPont v. Yoshida*, 393 F.Supp 502, 185 USPQ 597 (E.D.N.Y. 1975) ("...proximity [of products or services] may be measured against that of the certification mark user..."). *See also Jos. S. Cohen & Sons Co. v. Hearst Magazines*, 220 F.2d 763, 105 USPQ 269 (CCPA 1955); and *Community of Roquefort v. William Faehndrich, Inc*., 198 F.Supp. 291, 131 USPQ 435 (S.D.N.Y. 1961), *aff'd*, 303 F.2d 494, 133 USPQ 633 (2d Cir.

1962).  Other issues relating to the goods and services, including the channels of trade and purchasers therefor, are determined from the standpoint of the users as well.

We note that in the notice of opposition opposer asserts, *inter alia*, that applicant's mark is confusingly similar to the marks in all of its pleaded registrations, to which opposer refers as its "RATED R marks."  In its brief, however, opposer argues only that applicant's mark is confusingly similar to its registered mark, RATED R. Accordingly, for purposes of the *du Pont* factors that are relevant to this case we will consider applicant's involved mark and opposer's RATED R mark that is the subject of its Registration No. 1436926 and certifies services that are essentially identical to those in opposer's other pleaded registrations.

### Fame of Opposer's RATED R Mark

We begin our likelihood of confusion analysis with the fifth *du Pont* factor, which requires us to consider evidence of the fame of opposer's mark and to give great weight to such evidence if it exists.  *See Bose Corp. v. QSC Audio Products Inc*., 293 F.3d 1367, 63 USPQ2d 1303 (Fed. Cir. 2002); *Recot Inc. v. Becton*, 214 F.3d 1322, 54 F.2d 1894 (Fed. Cir. 2000); and *Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 22 USPQ2d 1453 (Fed. Cir. 1992).

> Fame of an opposer's mark or marks, if it exists, plays a "dominant role in the process of balancing the *DuPont* factors," *Recot*, 214 F.3d at 1327, 54 USPQ2d at 1456, and "[f]amous marks thus enjoy a wide latitude of legal protection." *Id.* This is true as famous marks are more likely to be remembered and associated in the public mind than a weaker mark, and are thus more attractive as targets for would-be copyists. *Id.* Indeed, "[a] strong mark … casts a long shadow which competitors must avoid." *Kenner Parker Toys*, 963 F.2d at 353, 22 USPQ2d at 1456. A famous mark is one "with extensive public recognition and renown." *Id.*

*Bose Corp. v. QSC Audio Products Inc., supra*, 63 USPQ2d at 1305.

The August 17, 2005 testimony deposition of Joan Graves, opposer's Chairman of the Classification and Rating Administration, and the exhibits thereto, establish the following undisputed facts. Opposer first used its RATED R mark in connection with certifying the content of motion pictures in 1968 and has used, *inter alia*, the RATED R mark continuously since then (Graves dep. at 8-10, Exhibits 1 and 3). Opposer's rating system is voluntary, except for its member organizations that must submit their motion pictures for rating prior to release (*Id.* at 10). Nonetheless, a majority of producers of motion pictures seek and obtain ratings for their theatrical releases (*Id*). As previously noted, since 1968, opposer has rated over 20,000 films, and of those over 61 percent received an R rating (*Id.* at 10-13, Exhibit 2).

The popularity of motion pictures in the United States cannot be overstated. As previously indicated, there are over 35,000 theatrical motion picture screens in the United States (*Id*. at 34). In 2004, 1.5 billion theatrical movie tickets were sold in the United States (*Id*. at 41). Also in 2004, 1.3 billion DVDs containing theatrical movies were sold in the United States (*Id*. at 42). Opposer's RATED R mark appears on all movies so rated; on all advertisements therefor, including posters, flyers, trailers shown in movie theaters, on television, and on movie DVDs, and Internet advertisements; on movie theater marquees displaying the titles of such movies; and on opposer's Internet website (*Id*. at 29-41, Exhibits 5, 8-10). Opposer's Internet website receives between 135,000 and 150,000 visitors per month (*Id*. at 40). In 2004, opposer's member companies spent four billion dollars on advertising and promoting their movies (*Id*. at 28). We find these numbers to be substantial.

Print media coverage of opposer's RATED R mark is widespread. Articles concerning opposer's RATED R mark and the significance of such rating appear in such major market newspapers and general interest magazines as The New York Times; The Washington Post; Los Angeles Times; US News and World Report; Newsday(NY); The Boston Globe; Chicago Tribune; Orange County Register; Orlando Sentinel; The

Washington Times; Newsweek; and Billboard.  (Notice of Reliance, Exhibit F).

Since 1969 opposer has commissioned annual surveys to measure public awareness of its rating system and the perceived usefulness thereof (*Id*. at 43, Exhibit 11).  A survey conducted in 2004 indicated that 95 percent of those surveyed were aware of opposer's rating system (*Id*. at 43-46, Exhibits 12-22).  A report issued in 2000 by the Federal Trade Commission on the marketing of violent entertainment to children included a survey of parents and children concerning their use of, *inter alia*, rating systems for movies (*Id*. at 47-48, Exhibit 23).  According to that survey, 91 percent of parents are aware of and familiar with opposer's movie rating system; and 70 percent are familiar with the R rating (*Id*. at 48).  Furthermore, for purposes of this proceeding opposer commissioned a third party to conduct public opinion research to determine the level of fame of opposer's RATED R mark (McCullough dep. at 7, Exhibit 47).  The resulting survey of 211 respondents, aged 18 or older, indicates that 85 percent of respondents are familiar generally with the RATED R mark, while 74 percent of respondents are familiar with the RATED R mark in connection with movies or movie ratings.

We note in addition that applicant "concedes that there are many motion pictures, and that many people are aware

15

that RATED R applies to motion picture ratings" (brief, p. 7). Moreover, applicant "concedes that RATED R is useful for parents to help them decide what motion pictures to see with their children." (*Id.*) Applicant further "concedes that the 'RATED R' mark of Opposer is known for rating motion pictures, but that is only one factor." (*Id.* at 10). Finally, "[a]pplicant does not deny that Opposer's RATED R mark is known for rating films, as it appears to have monopolized that field" (*Id.* at 11).

Based upon this undisputed evidence of record, we find that opposer's RATED R mark is famous for purposes of the fifth *du Pont* factor.[7] Such fame must be accorded dominant weight in our likelihood of confusion analysis. *See Recot, supra,* at 1327. *See also Miss Universe L.P., LLLP v. Community Marketing, Inc.,* __USPQ2d__ (TTAB 2007).

<u>The Marks</u>

We next turn to the first *du Pont* factor, i.e., whether applicant's RATED R SPORTSWEAR mark and opposer's RATED R mark are similar or dissimilar when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression. *See Palm Bay Imports, Inc. v. Veuve Clicquot, supra.* The test, under the first *du Pont* factor, is not whether the marks can be distinguished when

---

[7] We need not and do not consider the issue of whether opposer's mark is famous for purposes of its dilution claim, because as discussed below, we are not reaching that claim.

16

subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods and/or services offered under the respective marks is likely to result. Because the involved goods and services would be marketed to the general public, our focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975). Furthermore, although the marks at issue must be considered in their entireties, it is well settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See In re Chatam International Inc.,* 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004); and *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).

In this case, we find that applicant's RATED R SPORTSWEAR mark incorporates in its entirety opposer's mark, RATED R. The dominant and distinctive RATED R portion of applicant's mark is identical to opposer's RATED R mark in appearance, spelling and sound. The disclaimed term "SPORTSWEAR" is not a dominant term in applicant's mark. Rather, the term "SPORTSWEAR" appears to be generic as intended to be applied to applicant's various items of

17

clothing and thus lacks distinctiveness with regard thereto. As such, we find that the addition of the term "SPORTSWEAR" to applicant's mark does not serve to create a commercial impression that is distinct from that of opposer's mark. Furthermore, because the dominant portion of applicant's mark is identical to opposer's mark, the marks convey highly similar connotations.

In view of the high degree of similarity between applicant's mark and opposer's RATED R mark in appearance, sound, connotation and overall commercial impression, this *du Pont* factor heavily favors opposer.

The Goods and Services

With regard to the second *du Pont* factor, i.e., the similarity or dissimilarity and nature of the goods and services, it is well-established that the goods and services of the parties or their certificants need not be similar or competitive, or even offered through the same channels of trade, to support a holding of likelihood of confusion. It is sufficient that the respective goods and services are related in some manner, and/or that the conditions and activities surrounding the marketing of the goods and services are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the marks, give rise to the mistaken belief that they originate from the same source. *See Hilson*

18

*Research, Inc. v. Society for Human Resource Management*, 27 USPQ2d 1423 (TTAB 1993); and *In re International Telephone & Telephone Corp*., 197 USPQ 910, 911 (TTAB 1978). The issue, of course, is not whether purchasers would confuse the goods and services, but rather whether there is a likelihood of confusion as to the source thereof. *In re Rexel Inc*., 223 USPQ 830 (TTAB 1984).

As previously noted, because opposer's RATED R mark is a certification mark, it is not used by opposer. *See* Section 4 of the Trademark Act, 15 U.S.C. §1054. Rather, opposer's RATED R mark is used by persons certified by opposer. *See* TMEP §1306.01(a). Specifically, persons use opposer's RATED R mark in connection with "entertainment services rendered through the medium of motion pictures" to certify that a motion picture created thereby

> …is an adult film in some of its aspects and
> treatment so far as language, violence, nudity and
> sensuality are concerned, and that because of such
> elements no one under the age of 17 should be
> admitted unless accompanied by a parent or
> guardian.

Thus, for purposes of our likelihood of confusion analysis, we must determine whether applicant's "men's and ladies' shirts, pants, ladies' dresses, shorts and jackets" are related to the "entertainment services rendered through the medium of motion pictures" provided by users of opposer's RATED R certification mark. *See DuPont v. Yoshida, supra*.

19

*See also Tea Board of India v. Republic of Tea, Inc.*, 80 USPQ2d 1881 (TTAB 2006).

Opposer has submitted by notice of reliance the following use-based third-party registrations which show that various entities have adopted a single mark for clothing items that are identical in part or otherwise substantially similar to the goods identified in applicant's application and the services certified by opposer and provided by users of opposer's certification mark (August 24, 2004 Notice of Reliance and Exhibit C thereto):

Registration No. 2759097 for the mark TANK GIRL;

Registration No. 2128539 for the mark SLAMDANCE;

Registration No. 2465680 for the mark shown below;



Registration No. 2652101 for the mark shown below;



Registration No. 2384715 for the mark CENTROPOLIS; and

Registration No. 2374585 for the mark THE SHOOTING GALLERY.

Third-party registrations which individually cover a number of different items and which are based on use in commerce serve to suggest that the listed goods and/or services are

of a type which may emanate from a single source. *See In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1786 (TTAB 1993). Opposer further has submitted testimony as well as evidence in the form of photographs and "screen shots" from Internet websites that display tee shirts emblazoned with the titles of theatrical motion pictures and images therefrom (McGuire dep. at 5-13 and Exhibits 35-46 thereto).[8] In addition, opposer has submitted testimony as well as evidence in the form of photographs that theatrical motion pictures are promoted by means of wearing apparel (Graves dep. at 49-51 and Exhibits 24-30).[9] The above uncontroverted testimony and evidence further suggests that users of opposer's certification mark, that is, individuals and entities that provide entertainment in the form of theatrical motion pictures, produce promotional clothing items bearing the same mark as the motion picture. In other words, users of opposer's certification mark utilize the same marks to identify both their entertainment services and clothing that is identical to or closely related to applicant's goods. We note in addition that while applicant argues that opposer

---

[8] Examples of these theatrical motion pictures include such titles as "Scarface," "Evil Dead," "Pulp Fiction," "Sin City," "Batman Begins," "Kill Bill," and "The Matrix."

[9] Examples of these theatrical motion pictures include such titles as "Adventures of Pluto Nash," "Queen of the Damned," "Scooby Doo," "The Mummy Returns," and "Dr. Seuss' How the Grinch Stole Christmas."

21

"has no financial stake in any movie," (brief, p. 8) applicant concedes that clothing is used as "a marketing mechanism to get people to see movies" (*Id*). Finally, our primary reviewing court has held that in cases such as this in which an opposer's mark is famous, there is an even greater likelihood that "purchasers will be confused inasmuch as less care may be taken in purchasing a product under a famous mark" even when the goods and/or services involved are not closely related. *See Recot, supra*, at 1898.

In view of the related nature of applicant's goods and the services provided by users of opposer's certification mark, and further in view of the dominant weight accorded to the fame of opposer's mark, this *du Pont* factor also favors opposer.

Channels of Trade

Because the evidence introduced by opposer establishes that applicant's goods and the services provided by users of opposer's certification mark are related, and because there are no recited restrictions as to their channels of trade or classes of purchasers, we must assume that the goods and services are available in all the normal channels of trade to all the usual purchasers for such goods and services, and that the channels of trade and the purchasers for applicant's goods as well as the services certified by

22

opposer would be the same. *See Interstate Brands Corp. v. McKee Foods Corp*., 53 USPQ2d 1910 (TTAB 2000). It is settled that in making our determination regarding the relatedness of the goods and services provided or certified by the parties, we must look to the goods and services as identified in the involved application and pleaded registration. *See Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed.") *See also Paula Payne Products v. Johnson Publishing Co.*, 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods.") Thus, while we recognize that applicant's goods may not be available in movie theaters through which persons render the services certified by opposer, both the goods and services are presumed to be marketed to the same consumers, i.e., the general public. As a result of the foregoing, we find that if these related goods and services were offered under

similar marks there would be a likelihood of confusion.

Thus, this *du Pont* factor also favors opposer.

### Use of Similar Marks

In its brief, applicant refers to "millions of references" (brief, p. 13) to uses of RATED R by entities unrelated to opposer for goods and services that are not related to the services certified by opposer. However, and as noted above, applicant has neither introduced any evidence on its behalf in this proceeding nor filed the transcripts of any testimonial depositions by which it might have introduced evidence of third-party use.[10] Applicant's mere assertion of such use has no probative value in our consideration of the relative strength of opposer's RATED R mark. Thus, we find that applicant has failed to support its contention that opposer's RATED R mark is in widespread use by third parties.

---

[10] We note that opposer submitted by notice of reliance applicant's response to opposer's Interrogatory No. 26 consisting of a printout of a search result summary from the Google™ Internet search engine showing use of RATED R as a key word in a search thereof. Such results are of limited probative value because they do not show use of RATED R as a heading, link or content on a website. *See In re Fitch IBCA, Inc.*, 64 USPQ2d 1058, 1060 (TTAB 2002). Further, the search summaries are so truncated that it is not possible to determine what meaning RATED R may have, or how it is being used. Because it is not possible to determine the manner in which RATED R is used in the websites referenced by the submitted search summary, it is not persuasive of applicant's contention regarding the nature and extent, if any, of third party use of RATED R.

Accordingly, because there is no evidence of any third-party use of RATED R as a mark, this *du Pont* factor must be considered to favor opposer.

Actual Confusion

The final d*u Pont* factor discussed by the parties is the lack of instances of actual confusion.  Applicant asserts that the absence of actual confusion suggests no likelihood of confusion.  However, applicant has not introduced any evidence of the extent of its use of the applied-for mark.  Furthermore, evidence submitted by opposer suggests that applicant, who applied for its involved mark on the basis of its bona fide intent to use the mark in commerce under Trademark Act Section 1(b), has not yet made use of the mark on most of the goods identified in its application (Kriplani discovery dep. at 11-13).  Accordingly, there is insufficient evidence for us to conclude that there has been an opportunity for confusion to occur if confusion were likely.  Furthermore, it is not necessary to show actual confusion in order to establish likelihood of confusion. *See Weiss Associates Inc. v. HRL Associates Inc.* 902 F.2d 1546, 223 USPQ 1025 (Fed. Cir. 1990). *See also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002).

Accordingly, this *du Pont* factor must be considered to be neutral.

## Conclusion

We have carefully considered all of the evidence pertaining to the relevant *du Pont* factors, as well as all of the parties' arguments with respect thereto, including any evidence and arguments not specifically discussed in this opinion.  We conclude, in view thereof, that opposer has established that consumers familiar with the services certified by opposer under its previously used and registered RATED R mark would be likely to believe, upon encountering applicant's RATED R SPORTSWEAR mark for its identified goods that those goods and the services certified by opposer originate with or are associated with or sponsored by the same entity.  In making our determination, we have balanced the relevant *du Pont* factors.  The factors of the fame of opposer's RATED R mark, the similarities between the marks and the relatedness of the goods and services weigh strongly in opposer's favor.

To the extent that any of applicant's points raise a doubt about our conclusion, all doubt on the issue of likelihood of confusion must be resolved in favor of the prior user and against the newcomer.  *See San Fernando Mfg. Co. v. JFD Electronics Components Corp*., 565 F.2d 683, 196 USPQ 1, 2 (CCPA 1977).

## Dilution

Finally, we note that opposer also argues that given the demonstrated prior fame of its RATED R mark, applicant's use of its RATED R SPORTSWEAR mark is likely to cause dilution of opposer's mark under the Federal Trademark Dilution Act. However, given our determination that there is a likelihood of confusion herein, we decline to reach a determination on the question of dilution in this proceeding.

DECISION: The opposition is sustained, and registration to applicant is refused on the ground of likelihood of confusion.